# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GARY DAVIS, an individual on
behalf of himself, as Private
Attorney General and on behalf of
all others similarly,
                    *Plaintiff-Appellant,*

                    v.

HSBC BANK NEVADA, N.A., a
National Bank; BEST BUY CO.,
INC., a Minnesota corporation;
BEST BUY STORES, L.P., a Virginia
limited partnership; HSBC
FINANCE CORPORATION, a Delaware
corporation,
                    *Defendants-Appellees.*

No. 10-56488

D.C. No.
2:08-cv-05692-
GHK-JC

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
February 6, 2012—Pasadena, California

Filed August 31, 2012

Before: Dorothy W. Nelson, Diarmuid F. O'Scannlain, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Nelson

10365

## COUNSEL

Drew E. Pomerance (argued), Burton E. Falk, Roxborough, Pomerance, Nye & Adreani, LLP, Woodland Hills, California, for the plaintiff-appellant.

Stuart M. Richter (argued), Gregory S. Korman, Katten Muchin Rosenman LLP, Los Angeles, California, for the defendants-appellees.

## OPINION

NELSON, Senior Circuit Judge:

Gary Davis appeals the district court's dismissal of his First Amended Complaint ("FAC"). In this putative class action, Davis alleges that HSBC Bank Nevada, N.A. ("HSBC") and Best Buy Stores, L.P. ("Best Buy") (collectively, "Defendants") defrauded California customers by offering credit cards without adequately disclosing that cardholders would be subject to an annual fee. We must decide whether the district court erred when it considered extrinsic evidence in deciding Defendants' motion to dismiss, and whether dismissal was proper under Federal Rule of Civil Procedure 12(b)(6). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.　BACKGROUND[1]

Best Buy operates a national chain of retail stores that sells consumer electronics and related services. As part of its marketing platform, Best Buy implements the "Reward Zone Program," which allows customers to earn "Reward Certificates" for their purchases at Best Buy stores and redeem the certificates for discounts off future purchases at such stores. At the same time, qualified consumers may also obtain a Reward Zone Program MasterCard ("RZMC"), a credit card that is issued by HSBC, a federally chartered bank regulated by the Office of the Comptroller of the Currency ("OCC"). The owner of an RZMC is automatically enrolled in the Reward Zone Program, and may earn reward certificates by using the card not only at Best Buy, but wherever MasterCard is accepted. Accordingly, Defendants advertised the RZMC as providing the cardholder, among other things, with the ability to obtain reward certificates as well as exclusive bonus point offers to earn rewards more rapidly.

---

[1]Because this appeal is from an order granting dismissal, the facts are taken from the First Amended Complaint.

In or around April 2007, Davis read a newspaper advertisement for the RZMC stating that applicants would receive $25 worth of reward certificates with their very first purchase using the card. Davis applied online to become an RZMC holder. Before applying, however, he read a webpage entitled "Program Rules — Best Buy Reward Zone." Further, while applying, Davis viewed a webpage entitled "FAQ's" (Frequently Asked Questions). Neither webpage mentioned an annual fee for using the RZMC.

At step two of the application process, Davis was directed to Best Buy's website labeled "Best Buy MBBC Consumer — Review the Important Account Credit Terms." In the upper-left corner of the page, in boldface font at least twice as large as the other text on the page, read the words "Terms and Conditions." Immediately below that, also in bold, was the subheading, "Important Terms of Your Best Buy Credit Account and Disclosure Statement" ("Important Terms & Disclosure Statement"). Underneath stood a scrolling rectangular text box, the contents of which were only partially visible because one would need to scroll down to view the whole statement. The visible portion commenced with the instruction, "Read the notice below carefully and print and/or download a copy for your records," followed by the text:

The Reward Zone® program
MasterCard® Privacy Statement
HSBC BANK NEVADA, N.A.

Beneath the text box was a small check-box, which was adjacent to the following affirmation: "I agree to the Important Terms & Disclosure Statement of the Best Buy Reward Zone® MasterCard®." The FAC does not allege that Davis read the contents of the Important Terms and Disclosure Statement, but only alleges that he checked the box and completed his online application.

Davis's application was approved and shortly thereafter he received his new credit card in the mail. Also enclosed with

the card were seven brochures, including a document entitled "Cardholder Agreement and Disclosure Statement," as well as one entitled "Additional Disclosure Statement." Upon reading the latter, Davis was "surprised" to learn that there was a $59 annual fee for use of the card. At that point, Davis admits, he revisited the terms and conditions website, scrolled down toward the end of the Important Terms & Disclosure Statement, and discovered the disclosure of a possible annual fee. Davis asked HSBC to waive the annual fee, but the bank declined. Instead of canceling the card, Davis refused to activate it and continued to pay the annual fee for five years.

On July 28, 2008, Davis filed a class action complaint in state court against Defendants[2] on behalf of a putative class including all California residents who applied for an RZMC between 2004 and 2008, and were charged an annual fee. He alleges that Defendants failed to disclose adequately the existence of the annual fee. The case was removed to federal court and then remanded to state court, triggering an appeal to this Court, which reversed the remand order. *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1030 (9th Cir. 2009). Upon return to federal court, Defendants filed a motion to dismiss, which the district court granted on federal preemption grounds. Davis was given 30 days to amend the complaint.

On September 25, 2009, Davis filed the FAC on the same theory that Defendants failed to disclose adequately whether RZMC owners would be charged an annual fee. The operative complaint alleges four causes of action for (1) false advertising in violation of the California Business & Professions Code § 17500, *et seq.* ("False Advertising Law" or "FAL"), as to Best Buy; (2) fraudulent concealment as to both Defendants; (3) "unlawful" business practices in violation of the California Business & Professions Code § 17200, *et seq.*

---

[2]The original complaint also brought claims against Defendants' affiliates, HSBC Finance Corporation and Best Buy Co., Inc. However, Davis has since voluntarily dismissed these affiliates from the case.

("Unfair Competition Law" or "UCL") as to HSBC; and (4) "unfair" and "fraudulent" business practices in violation of the UCL as to Best Buy.

Defendants filed a Rule 12(b)(6) motion to dismiss the FAC, along with a motion requesting judicial notice of three disclosure documents that were referenced in, but not attached to the FAC: (1) a copy of the complete Important Terms & Disclosure Statement contained in the scrolling box from the online application; (2) a copy of the Additional Disclosure Statement received in the mail; (3) a copy of the Cardmember Agreement and Disclosure Statement received in the mail (collectively, "disclosure documents").

The district court dismissed all four claims with prejudice on the ground that they fail to state claims entitling Davis to relief.

Davis timely appealed the dismissal of his claims.

## II.  STANDARD OF REVIEW

We review de novo a district court's order granting a motion to dismiss pursuant to Rule 12(b)(6). *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1018 (9th Cir. 2011). To survive dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). " 'Factual allegations must be enough to raise a right to relief above the speculative level.' " *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Bell Atl. Corp.*, 550 U.S. at 555). We must accept "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). At the same time, "we can affirm a 12(b)(6) dismissal on any ground supported by the record, even if the district court did not rely on

the ground." *United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (internal citation and quotation marks omitted). As we sit in diversity, California law governs our analysis of the state law claims. *See, e.g.*, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).

We take this opportunity to clarify what standard of review applies to a district court's decision to incorporate by reference documents outside the pleadings. Our relevant case law has recognized consistently that the district court may, but is not required to incorporate documents by reference. *See, e.g.*, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (observing that a court "may consider" evidence that is incorporated by reference); *Knievel*, 393 F.3d at 1076 (noting that the incorporation doctrine "permits" the court to consider extrinsic documents); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff 's claim"). Additionally, in *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007), we explained that "Federal Rule of Civil Procedure 12(b)(6) specifically gives courts the discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." Thus, we have held, for example, that a district court's decision to take judicial notice of extrinsic evidence shall be reviewed for abuse of discretion. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). The foregoing leads us to conclude that the district court's decision to incorporate by reference documents into the complaint shall be reviewed for an abuse of discretion.

## III. DISCUSSION

On appeal, Davis argues preliminarily that the district court erred when it considered three disclosure documents that were

not attached to the FAC, and which were introduced by Defendants in support of their motion to dismiss the FAC. Davis next argues the district court's conclusion that none of the four claims plausibly suggested a right to relief was error. We address each argument in turn.

## A. Disclosure Documents

**[1]** The district court expressly incorporated by reference three disclosure documents for which Defendants sought judicial notice in support of their motion to dismiss. Under the "incorporation by reference" doctrine in this Circuit, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Specifically, courts may take into account "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel*, 393 F.3d at 1076 (alteration in original) (internal citation and quotation marks omitted). A court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

**[2]** In this case, it is beyond dispute that the FAC alleges the contents of the disclosure documents. The complaint emphasizes that only part of the contents of the Important Terms & Disclosure Statement were visible without scrolling down, and that the portion which was visible concerned only the Privacy Statement. Davis also alleges in detail that the Cardmember Agreement and Disclosure Statement did not mention the annual fee, whereas the Additional Disclosure Statement did. Davis does not dispute these references. Instead, he argues that the district court mistakenly determined that he did not challenge the documents' authenticity. He claims he raised this issue when he stated in his opposition to the motion to dismiss: "There is no evidence that these doc-

uments were ever reviewed by Plaintiff or made available to Plaintiff." We disagree and conclude that Davis did not challenge the documents' authenticity.

Whether or not Davis had access to and reviewed the proffered documents is a matter unrelated to their authenticity — i.e., whether the documents are "what its proponent claims." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (internal citation and quotation marks omitted); *see also* Fed. R. Evid. 901 (noting that authentication concerns whether "the item is what the proponent claims it is"). Here, Defendants claimed that the documents are copies of the disclosure documents referenced in the FAC. Even assuming these copies were not personally reviewed by Davis, that does not address, much less cast doubt on, whether the copies are accurate reproductions of the original disclosure documents. Therefore, Davis's objection was insufficient to challenge the documents' authenticity.

Our conclusion is supported by the fact that Davis had ample opportunity in district court to argue that the disclosure documents were not authentic, yet failed to do so. Davis initially objected to the admission of the documents in his opposition to the motion to dismiss the original complaint, on the ground that the documents were not reviewed by or made available to him. In their reply brief, Defendants pointed out that Davis "never questions the[ ] authenticity" of the proffered documents. If Davis had wished to contest this assertion, he could have done so in his subsequent opposition to the motion to dismiss the FAC. Yet he merely repeated verbatim his prior protestation that the documents were not reviewed by, or made available to him.

Further, Davis's "ongoing and substantial reliance on the [documents] as a basis for [his] allegations substantially weakens [his] position." *In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds as recognized in South Ferry LP, No. 2 v. Killinger*,

542 F.3d 776, 784 (9th Cir. 2008). In particular, having based his allegations on the contents and appearance of the Important Terms & Disclosure Statement, "[Davis] can hardly complain when [Defendants] refer to the same information in their defense." *Id.*

**[3]** We therefore hold that where the party opposing incorporation by reference argues only that he did not review or have access to the proffered copies, this does not amount to a challenge to those documents' authenticity. Accordingly, the district court properly incorporated the disclosure documents.

Further, we reject Davis's attempt to challenge the documents' authenticity for the first time on appeal. Because Davis failed to assert an objection as to authenticity before the district court, he has waived this objection on appeal. *See McGonigle v. Combs*, 968 F.2d 810, 825 (9th Cir. 1992).

## B. False Advertising Claim Against Best Buy

Turning to the claims in the FAC, Davis first alleges that Best Buy's advertising was misleading because it failed to disclose the existence of an annual fee. We agree with the district court that no reasonable consumer would have been deceived by these advertisements into thinking that no annual fee would be imposed.

**[4]** California's False Advertising Law makes it unlawful for any person to "induce the public to enter into any obligation" based on a statement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Whether an advertisement is "misleading" must be judged by the effect it would have on a reasonable consumer. *Williams*, 552 F.3d at 938; *see also Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 494 (Ct. App. 2003) ("[U]nless the advertisement targets a particular disad-

vantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). A reasonable consumer is "the ordinary consumer acting reasonably under the circumstances." *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 48 (Ct. App. 2006) (internal citation and quotation marks omitted). To prevail under this standard, Davis must " 'show that members of the public are likely to be deceived' " by the advertisement. *Williams*, 552 F.3d at 938 (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). In applying this test, we are mindful that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Id.*

As an initial matter, we note that Davis does not allege that Best Buy's advertisement contained any statements that were actually false. He does not suggest, for example, that the advertisement stated that the RZMC would be free, or that it would generate a profit. Nor can Davis be heard to argue that the advertisement's failure to mention the annual fee, standing alone, supports a reasonable belief that there was no annual fee. Given the advertisement's legible disclaimer that "[o]ther restrictions may apply," no reasonable consumer could have believed that if an annual fee was not mentioned, it must not exist.

This does not end our inquiry, however, because California courts construe Section 17500 to extend beyond literal falsities. The statute has been interpreted broadly to encompass " 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.' " *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002)). Consequently, even "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under

th[is] section[ ]." *Day v. AT&T Corp.*, 74 Cal. Rptr. 2d 55, 60 (Ct. App. 1998).

**[5]** Davis contends that the omission of the annual fee was misleading because the promise of reward certificates beginning with the first purchase implied that no offsetting charges would operate to "nullify" those rewards. This argument fails. While it is true that an annual fee could offset the cash value of any rewards, the same tradeoff exists with respect to numerous other costs of owning a credit card, such as monthly interest charges, late-payment fees, and over-the-limit fees. It defies common sense to claim that this tradeoff would lead a rational consumer to conclude that any credit card that offers rewards for spending must therefore not have associated costs of ownership.

**[6]** Of course, it is possible that some consumers might hazard such an assumption. But "[a] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Lavie*, 129 Cal. Rptr. 2d at 494 (internal citation and quotation marks omitted). We therefore hold that Best Buy's advertising was not likely to deceive a reasonable consumer; the district court's dismissal of the false advertising claim was proper.

## C. Fraudulent Concealment Claim Against Best Buy and HSBC

Davis next alleges that Defendants fraudulently concealed the existence of an annual fee in its advertising and marketing. "The elements of a cause of action for fraud in California are: (a) misrepresentation (false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or 'scienter' ); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Com-*

*pany*, 567 F.3d 1120, 1126 (9th Cir. 2009) (emphasis in original) (internal citation and quotation marks omitted).

In particular, a claim for fraudulent concealment requires that: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 7 Cal. Rptr. 2d 859, 864 (Ct. App. 1992). Without reaching the other factors, the district court determined that Davis's claim fails because he cannot demonstrate justifiable reliance on the purported failure to disclose the annual fee. We agree.

**[7]** In an action for fraud under California law, recovery shall be denied "[i]f the conduct of the plaintiff [in relying upon a misrepresentation] in the light of his own intelligence and information was manifestly unreasonable." *Broberg v. Guardian Life Ins. Co. of Am.*, 90 Cal. Rptr. 3d 225, 232 (Ct. App. 2009) (alterations in original) (internal citation and quotation marks omitted). To establish manifest unreasonableness, "[i]t must appear that [plaintiff] put faith in representations that were preposterous or shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth." *Id.* (internal quotation marks omitted). We bear in mind, however, that "[w]hether reliance [on a misrepresentation] was reasonable is a question of fact for the jury, and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion." *Id.* (alterations in original) (internal citation and quotation marks omitted).

**[8]** Fatal to Davis's claim is the undisputed fact that he failed to read the Important Terms & Disclosure Statement

before checking the box accepting these terms and conditions. California courts have held that where, as here, the parties to an agreement deal at arm's length, it is not reasonable to fail to read a contract before signing it. *See, e.g.*, *Desert Outdoor Advertising v. Super. Ct.*, 127 Cal. Rptr. 3d 158, 163 (Ct. App. 2011); *Brown v. Wells Fargo Bank, NA*, 85 Cal. Rptr. 3d 817, 833-34 (Ct. App. 2008) (explaining that there can be no reasonable reliance where the plaintiff, dealing at arm's length, "had a reasonable opportunity to discover the true terms of the contract" but simply failed to read the contract before signing it).

Moreover, the existence of the annual fee was "within [Davis's] observation" because he concedes that he was able to discover the annual fee when he revisited Best Buy's website and scrolled through the Important Terms & Disclosure Statement. However, by refusing to read this document before completing the application, and instead assuming the absence of an annual fee, Davis "put faith" in a purported representation that was "shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth." *Broberg*, 90 Cal. Rptr. 3d at 232 (internal quotation marks omitted). The only conclusion that reasonable minds may draw is that Davis's reliance on the purported misrepresentation was manifestly unreasonable.

**[9]** Davis's reliance on *Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883 (9th Cir. 2009), is misplaced. He argues that *Barrer* leaves open the possibility that, where a disclaimer concerning a particular term is buried in the fine print of an agreement, a reasonable consumer may still be deceived by advertising or marketing materials concerning that term. This is not what *Barrer* says. Rather, we held in *Barrer* that because a provision empowering the defendant to change the cardholder's annual percentage rate for any reason was "buried too deeply in the fine print," the defendant could not show, as a matter of law, that the credit card agreement made "clear and conspicuous" disclosure of that provision, as

required by Regulation Z and the Truth in Lending Act ("TILA"). *Barrer*, 566 F.3d at 892. However, whether a disclosure satisfies the "clear and conspicuous" standard under the federal regulatory framework, *see Rubio v. Capital One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010) (noting that TILA and its implementing regulations require "absolute compliance" by creditors), is inapposite to whether, in the common law context, it was reasonable for Davis to rely on a purported representation when he did not read the terms and conditions to which he assented. Thus, we conclude that Davis cannot demonstrate reasonable reliance and that the district court did not err in dismissing his fraud claim.

## D.   UCL Claims Against HSBC and Best Buy

Davis's third and fourth causes of action each allege that Defendants made inadequate disclosure of the annual fee in their advertising and marketing in violation of the UCL. Defendants argue that because their annual fee disclosure complied with, and was required by, TILA and Regulation Z, their conduct falls within a "safe harbor" that is impervious to the UCL. We agree in part and conclude that while the disclosures in the online application fall within the safe harbor, the advertisements do not.

**[10]** First, it is necessary to understand what constitutes a safe harbor, and whether TILA and Regulation Z can meet this test. The California Supreme Court has explained the "safe harbor" doctrine in this way:

> Although the unfair competition law's scope is sweeping, it is not unlimited. . . . Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe

harbor,' plaintiffs may not use the general unfair competition law to assault that harbor.

*Cel-Tech Comms. Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 541 (Cal. 1999). Under the safe harbor doctrine, "[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct." *Id.*

[11] We conclude that TILA and Regulation Z provide such a safe harbor with respect to Defendants' disclosures in the online application. TILA requires that applications for an account under an open end consumer credit plan must include certain disclosures. 15 U.S.C. § 1637(c). Where, as here, the application is provided online and contains "specific information" about the terms and conditions, the application must disclose, among other things, "[a]ny annual fee, other periodic fee, or membership fee imposed for the issuance or availability of a credit card, including any account maintenance fee or other charge imposed based on activity or inactivity for the account during the billing cycle." 15 U.S.C. §§ 1637(c)(1)(A)(ii)(I), (c)(3)(B)(i)(I). The disclosure must appear "clearly and conspicuously" in the tabular format commonly referred to as the Schumer Box. 15 U.S.C. §§ 1632(a), (c)(2).

[12] TILA delegates to the Board of Governors of the Federal Reserve Bank ("Board") the duty to implement these disclosure requirements and to prescribe regulations governing the "form and manner" of the disclosures. 15 U.S.C. § 1632(c)(1)(A). Accordingly, the Board has promulgated "Regulation Z," 12 C.F.R. § 226.1 *et seq.*, which imposes "even more precise" disclosure requirements. *Virachack v. Univ. Ford*, 410 F.3d 579, 581 (9th Cir. 2005). Regulation Z requires lenders to provide specific disclosures "on or with a solicitation or an application to open a credit or charge card account." 12 C.F.R. §§ 226.5a(a), (b). In pertinent part, the lender must disclose "[a]ny annual or other periodic fee that

may be imposed for the issuance or availability of a credit or charge card, including any fee based on account activity or inactivity; how frequently it will be imposed; and the annualized amount of the fee." 12 C.F.R. § 226.5a(b)(2)(i). Further, the disclosure "shall be in the form of a table with headings, content, and format substantially similar to any of the applicable tables found in G-10 in appendix G to this part." 12 C.F.R. § 226.5a(a)(2)(i).

**[13]** We have no trouble concluding that TILA and Regulation Z create a safe harbor for Defendants' disclosure in the online application. Both the statute and the regulations clearly permit, and indeed require with equal force, the disclosure of any annual fee in an application for a credit card such as the RZMC. Our comparison of the online application's disclosure with the sample Schumer table in Appendix G demonstrates that Defendants' disclosure complied with these federal requirements. Indeed, Davis has not and cannot allege any violation under these provisions. Because the disclosure in the application clearly was permitted by federal law, it cannot serve as the basis for UCL liability.

Davis relies on *Krumme v. Mercury Ins. Co.*, 20 Cal. Rptr. 3d 485, 497 n.5 (Ct. App. 2004), for the contention that only statutes, not regulations, can create "safe harbors." In *Krumme*, the state intermediate court rejected an insurance company's argument that California insurance regulations provided a safe harbor against UCL liability. *Id.* It reasoned that such materials "are not germane to our analysis" because the California Supreme Court in *Cel-Tech* "held that only statutes can create a safe harbor." *Id.* (citing *Cel-Tech*, 973 P.2d at 541-42).

**[14]** We are not persuaded that *Cel-Tech* stands for this rule. *See Kairy v. SuperShuttle Intern.*, 660 F.3d 1146, 1150 (9th Cir. 2011) ("In a case requiring a federal court to apply California law, the court must apply the law as it believes the California Supreme Court would apply it.") (internal quota-

tion marks omitted). *Cel-Tech* involved whether the Unfair Practices Act provided a safe harbor to shield certain business conduct from liability under the UCL. The court explained that while an express statutory provision permitting specific conduct would be sufficient to create a safe harbor, "the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair." *Cel-Tech*, 973 P.2d at 542. The court then stated that "[i]f no statute provides a safe harbor," the court must decide whether the alleged misconduct violates the UCL. *Id.*

We reject the notion that this last passing reference established a bright-line rule that only statutes can create safe harbors. Instead, we understand the court to be outlining its analysis in the context of the case before it, which concerned only a potential statutory safe harbor. Furthermore, even if "the Legislature's mere failure to prohibit an activity" does not create a safe harbor, *id.* at 542, this does not preclude the possibility that one might arise where an implementing regulation clearly permits that activity. At bottom, the question of whether regulations can create safe harbors simply was not before the *Cel-Tech* Court, and therefore any intimation on this point was non-essential dicta.[3] Rather, we follow our previous decision in *Webb v. Smart Document Solutions, LLC*, where we observed that if HIPAA regulations "intended to permit [the defendant's] conduct, it cannot be 'unfair' under Section 17200." 499 F.3d 1078, 1082 (9th Cir. 2007). We therefore recognize that Regulation Z does provide a safe harbor for Defendants' disclosures in the online application.

---

[3]California intermediate courts agree with our conclusion that regulations can create safe harbors. Most recently, in *Lopez v. Nissan North America, Inc.*, 135 Cal. Rptr. 3d 116, 132 (Ct. App. 2011), the state appellate court discussed approvingly our decision in *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011), where we held that California gasoline regulations created a safe harbor against the UCL. *See also Byars v. SCME Mortgage Bankers, Inc.*, 135 Cal. Rptr. 2d 796, 805-806 (Ct. App. 2003) (noting that HUD policy statement created safe harbor for mortgage lender's conduct).

We would add that even if regulations could not create safe harbors, Davis does not deny that federal statutes can. Indeed, we have held as much. *See Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (holding that a credit card issuer's "compliance with TILA's disclosure requirements provides a safe harbor with respect to [the plaintiff's] UCL claims based only on the sufficiency of [the issuer's] disclosures"). In this case, to reiterate, TILA not only clearly permits the annual fee disclosure in the online application, it mandates it. *See* 15 U.S.C. §§ 1632(a), (c)(2); 15 U.S.C. §§ 1637(c)(1)(A)(ii)(I), (c)(3)(B)(i)(I). At a minimum, therefore, Defendants' disclosure draws protection from a safe harbor under TILA.

Davis next objects that any safe harbor under TILA could not protect Best Buy because TILA does not govern retailers such as Best Buy. Even if TILA does not govern Best Buy, which we need not decide, Davis's argument misses the mark because the safe harbor doctrine immunizes conduct, not entities. In *Cel-Tech*, the California Supreme Court explained that when specific legislation affirmatively permits conduct, "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair." 973 P.2d at 541. In other words, the safe harbor doctrine protects specific conduct not because of its provenance, but because the content of the conduct itself is deemed "fair" as a matter of law.[4] Here, TILA and Regulation Z expressly permit and require that online credit card applications disclose the annual fee in a prescribed manner.

---

[4]Consistent with this view, *Cel-Tech* repeatedly explains that it is the conduct, not the actor, that the safe harbor embraces. *See also* 973 P.2d at 541 ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."); *id.* ("To forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct."); *id.* at 541-42 ("Acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law . . . ."); *id.* at 542 ("[C]ourts may not use the unfair competition law to condemn actions the Legislature permits.").

Best Buy operated the online application process in compliance with these rules, and therefore its conduct cannot give rise to UCL liability.

[15] We are not convinced, however, that Defendants' advertisements may be swept into the ambit of this safe harbor. Unlike the online application, it is undisputed that the advertisements lacked any disclosure of the annual fee. Thus, to qualify for a safe harbor, we must be satisfied that the omission of the annual fee is permitted by some statute or regulation.

[16] Taking the contrary view, Davis contends that the advertisements were "solicitations" that violated TILA and Regulation Z because they failed to disclose the annual fee. However, this argument rests on a misunderstanding of the definition of "solicitation." Under Regulation Z, a "solicitation" is defined as "an offer by the card issuer to open a credit or charge card account that does not require the consumer to complete an application." 12 C.F.R. § 226.5a(a)(1). In other words, a solicitation is an offer made to a consumer who is pre-approved to be a cardholder and therefore need not undergo the credit approval process to acquire the card.

[17] This reading comports with the agency's official staff interpretation, which explains that where a card issuer merely "contact[s] a consumer who has not been preapproved for a card account about opening an account . . . and invite[s] the consumer to complete an application[, s]uch a contact does not meet the definition of *solicitation*, . . . unless the contact itself includes an application form in a direct mailing, electronic communication or 'take-one'; an oral application in a telephone contact initiated by the card issuer; or an application in an in-person contact initiated by the card issuer." Div. of Consumer and Cmty. Affairs of the Fed. Reserve Bd., Official Staff Comm., 12 C.F.R. Pt. 226, Supp. I, § 226.5a cmt. 5a(a)(1); *see Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir. 2011) ("We have been directed to treat

these official staff interpretations of Regulation Z as controlling unless demonstrably irrational.") (internal quotation marks and alteration omitted). Here, Davis does not allege that he viewed any advertisement offering to extend him credit without requiring an application. In fact, he concedes that he was required to and did submit an application before he was approved for the RZMC. Thus, the advertisements were not solicitations lacking the requisite disclosure.

Nevertheless, to fall under a safe harbor, the omission of the annual disclosure from Defendants' advertisements must be expressly permitted by some other provision. It is not enough if TILA and Regulation Z merely fail to prohibit such an omission. *Cel-Tech*, 973 P.2d at 542. However, the parties have not provided, and we have not located, any provision in TILA, Regulation Z, or elsewhere that clearly permits the omission of the annual fee disclosure from such advertisements. Instead, Regulation Z only specifies that if the advertisement sets forth a specific credit term that "triggers" additional disclosure, such as a finance charge, then the advertisement "shall also clearly and conspicuously set forth," among other items, the annual membership fee. *See* 12 C.F.R. § 226.16(b); Official Staff Comm., 12 C.F.R. Pt. 226, Supp. I, § 226.16(b)(1) cmt. 6. Thus, we cannot conclude that some provision affirmatively permits the absence of the annual fee disclosure from the advertisements.

Because no authority provides a safe harbor, we must decide whether Davis adequately has alleged that Defendants' advertisements violate the UCL. *Cel-Tech*, 973 P.2d at 542-43. The UCL prohibits "unfair competition," which is broadly defined to include "three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent." *Id.* at 540. Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Davis claims that HSBC violated the "unlawful" prong, and that

Best Buy violated the "fraudulent" and "unfair" prongs of the UCL. We address each contention in turn.

### 1. "Unlawful" Business Practices Claim Against HSBC

To be "unlawful" under the UCL, the advertisements must violate another "borrowed" law. *Cel-Tech*, 973 P.2d at 539-40 ("[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal quotation marks omitted). "[V]irtually any state, federal or local law can serve as the predicate for an action under section 17200." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 128 Cal. Rptr. 2d 463, 469 (Ct. App. 2002) (internal citation and quotation marks omitted). In this case, Davis alleges that the advertisements violated OCC regulation 12 C.F.R. § 7.4008(c), which states that "[a] national bank shall not engage in unfair or deceptive practices within the meaning of section 5 of the Federal Trade Commission Act, 15 U.S.C. [§ ] 45(a)(1), and regulations promulgated thereunder in connection with loans made under this § 7.4008." Defendants admit that the RZMC credit card loan was made pursuant to 12 C.F.R. § 7.4008, so the question is whether their conduct was unfair or deceptive.[5]

[18] A practice is deceptive under section 5 "(1) if it is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material." *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006). For the

---

[5]Davis also argues that the disclosure of the annual fee in the online application was "unfair and deceptive" in violation of the OCC regulation and was therefore "unlawful" under the UCL. However, because the safe harbor protects the application, this basis for the UCL claim must fail. While we are sensitive that there may be some facial tension between the TILA safe harbor and the OCC regulation in this situation, we need not address it here because (1) the California Supreme Court has not indicated that such a tension thwarts the safe harbor, and (2) in any event, the parties have not raised this issue.

same reasons discussed above with respect to the FAL claim, we reject the argument that the advertisements were deceptive under section 5. No reasonable consumer would have been deceived by these advertisements into thinking that no annual fee would be imposed.

Nor were the advertisements unfair. A practice is "unfair" under section 5 only if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). "In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice." *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010). An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it," or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact. *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1365-66 (11th Cir. 1988) (cited approvingly in *Neovi*, 604 F.3d at 1158).

Davis's alleged injury was certainly avoidable before he completed the application for the RZMC. The advertisement contained the disclaimer, "other restrictions may apply," which would have motivated a reasonable consumer to consult the terms and conditions. If that were not enough, the online application used boldface and oversized font to alert Davis to the Important Terms & Disclosure Statement, instructing him to "read the notice below carefully." The disclaimer and the terms and conditions were enough to give a reasonable consumer "reason to anticipate" the possibility of fees. Additionally, the fact that Davis was required to check the box indicating his assent before completing the application meant that he could have aborted his application upon reading the terms and conditions. This provided "the means to avoid" the alleged harm.

**[19]** The annual fee was also avoidable after the account was opened. Pursuant to the Cardmember Agreement, which Davis admits he received after completing the application, the annual fee was completely refundable if Davis closed his account within 90 days without using the card. Davis refused to do so, citing the negative impact it would have on his credit score. The question, however, is not whether subsequent mitigation was convenient or costless, but whether it was "reasonably possible." *Orkin*, 849 F.2d at 1365. Under these circumstances, we conclude that Davis reasonably could have avoided the annual fee, and therefore that the advertisements were not unfair under section 5. Accordingly, the advertisements were not "unlawful" under the UCL.

## 2. "Fraudulent" and "Unfair" Business Practices Claim Against Best Buy

**[20]** A business practice is fraudulent under the UCL if members of the public are likely to be deceived. *Puentes v. Wells Fargo Home Mortg., Inc.*, 72 Cal. Rptr. 3d 903, 909 (Ct. App. 2008). The challenged conduct "is judged by the effect it would have on a reasonable consumer." *Id.* (internal citation and quotation marks omitted). For the same reasons that we rejected Davis's FAL claim, we also conclude that the advertisements were not fraudulent under the UCL.

Last, we turn to Davis's contention that Best Buy's advertisements were "unfair" under the UCL. The UCL does not define the term "unfair." In fact, the proper definition of "unfair" conduct against consumers "is currently in flux" among California courts. *Lozano*, 504 F.3d at 735. Before *Cel-Tech*, courts held that "unfair" conduct occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 316 (Ct. App. 1999) (internal quotation marks omitted). Under this approach, courts must examine the practice's "impact on its alleged vic-

tim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Id.* (internal quotation marks omitted). In short, this balancing test must weigh "the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* (internal quotation marks omitted).

*Cel-Tech* held that the balancing test was "too amorphous" and "provide[d] too little guidance to courts and businesses." 973 P.2d at 543. Instead, the court held that "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 544. It further required that "any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* However, the court expressly limited its new test to actions by competitors alleging anti-competitive practices, emphasizing that "[n]othing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as 'fraudulent' or 'unlawful' business practices or 'unfair, deceptive, untrue or misleading advertising.' " *Id.* at 544 n.12.

"Following *Cel-Tech*, appellate court opinions have been divided over whether the definition of 'unfair' under the UCL as stated in *Cel-Tech* should apply to UCL actions brought by consumers." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 695 (Ct. App. 2010) (internal citation and quotation marks omitted); *see also Lozano*, 504 F.3d at 736 ("The California courts have not yet determined how to define 'unfair' in the *consumer* action context after *Cel-Tech*."). As we previously have summarized, some courts in California have extended the *Cel-Tech* definition to consumer actions, while others have applied the old balancing test, or borrowed the three-pronged test set forth in the FTC Act. *Lozano*, 504 F.3d

at 736; *see also Durell*, 108 Cal. Rptr. 3d at 695-96 (describing split of authority).

The question then is whether we are to apply the new definition in *Cel-Tech*, or to follow the former balancing test under *South Bay*. 504 F.3d at 736. In this regard, the district court erred when it held that Davis could not invoke the unfairness prong at all. The proper inquiry is what definition of "unfair" must apply to Davis's claim.

We need not resolve that question here, however, because Davis fails to state a claim under either definition. With respect to *Cel-Tech*, Davis advances no factual allegations to support the claim that the omission of the annual fee in Best Buy's advertisements threatens to violate the letter, policy, or spirit of the antitrust laws, or that it harms competition. As for the balancing test, we begin by noting that nothing in the FAC supports the conclusion that the advertisements were against public policy, immoral, unethical, oppressive, or unscrupulous. Quite the opposite, the advertisements warned that "other restrictions might apply," and the subsequent application process clearly disclosed the annual fee. More than this, Davis had the opportunity to cancel the account for a full refund within 90 days.

**[21]** Because Davis failed to read the terms and conditions before agreeing to them, and because he refused to cancel his card within 90 days, even when viewing the facts in Davis's favor, we must conclude that any harm he suffered was the product of his own behavior, not the advertisements. As a result, we cannot say that the FAC alleges "above the speculative level" that the advertisements themselves caused any harm. *Bell Atl. Corp.*, 550 U.S. at 555. Meanwhile, any harm is offset by Best Buy's strong justification for publishing the advertisement. Specifically, although Regulation Z does not expressly permit the omission of the annual fee disclosure from advertisements, it surely does not require such disclosure where, as here, the advertisement does not include spe-

cific terms that trigger additional disclosure. 12 C.F.R. § 226.16(b). Therefore, Best Buy justifiably relied on this federal guidance in circulating the advertisements. While we are mindful that what is "unfair" is a question of fact, "which involves an equitable weighing of all the circumstances, . . . we will affirm a judgment of dismissal where the complaint fails to allege facts showing that a business practice is unfair." *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 644 (Ct. App. 2006). Davis fails to plead facts to show that Best Buy engaged in an unfair business practice as defined in *South Bay*.

In sum, Defendants' online application is protected by the safe harbor doctrine. As for Defendants' advertisements, Davis fails to allege that they were "unlawful" as they were not deceptive and their alleged harm was reasonably avoidable. Davis also fails to allege that the advertisements were "fraudulent" or "unfair." Therefore, the district court properly dismissed the UCL claims in their entirety.[6]

## IV.   CONCLUSION

The district court properly incorporated the disclosure documents, and we affirm its order dismissing Davis's complaint with prejudice.

**AFFIRMED.**

---

[6]Although Defendants argue on appeal, as they did at the district court, that Davis's UCL claims are preempted by federal law, we need not reach that issue because we conclude that Davis has failed to state a claim under the UCL.