**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MAHIN OSKOUI, an individual,<br>      *Plaintiff-Appellant*,<br><br>            v.<br><br>J.P. MORGAN CHASE BANK, N.A.; U.S. BANK, N.A., as Trustee, Successor in Interest to Bank of America, National Association as successor by merger to LaSalle Bank NA as Trustee for WAMU Pass-Through Certificates Series 2007-HY06 Trust Erroneously Sued As U.S. Bank, N.A.,<br>      *Defendants-Appellees*. | No. 15-55457<br><br>D.C. No.<br>2:12-cv-03511-FMO-AGR<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted January 13, 2017
Pasadena, California

Filed March 13, 2017

Before:  Stephen S. Trott, M. Margaret McKeown, and
          Paul J. Watford, Circuit Judges.

Opinion by Judge Trott

**SUMMARY**[*]

**Loan Modification**

The panel reversed the district court's summary judgment
in favor of J.P. Morgan Chase Bank, N.A. in Mahin Oskoui's
action seeking damages she allegedly suffered when she
unsuccessfully attempted to modify the loan on her home.

The panel held that the facts plainly demonstrated a viable
claim under California's Unfair Competition Law on the
ground that Oskoui was a victim of an unconscionable
process.

The panel also held that the district court erred in failing
to acknowledge Oskoui's claim for breach of contract in her
pro se complaint.  The panel remanded with instructions to
permit Oskoui to amend if necessary and to proceed with her
complaint for a breach of contract.

The panel also remanded with instructions to permit
Oskoui to amend her complaint to allege a right to rescind
pursuant to *Jesinoski v. Countrywide Home Loans, Inc.,* 135
S. Ct. 790 (2015) (holding that the Truth in Lending Act

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

gives a borrower the right to rescind certain loans), conditioned on Oskoui's delivery of a rescission letter.

## COUNSEL

Richard L. Antognini (argued), Law Office of Richard L. Antognini, Grass Valley, California, for Plaintiff-Appellant.

Richard P. Steelman, Jr. (argued) and Glenn J. Plattner, Bryan Cave LLP, Santa Monica, California, for Defendants-Appellees.

## OPINION

TROTT, Circuit Judge:

Mahin Oskoui sued defendant J.P. Morgan Chase Bank, N.A. ("Chase") for damages allegedly suffered when she unsuccessfully attempted over a two-year period to modify the loan on her home. Acting as her own attorney, she asserted *inter alia* claims for a breach of contract, "breach of implied covenant of good faith and fair dealings," and a violation of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, the latter based on an assertion that she had been victimized by Chase's unfair or fraudulent business acts or practices. She also attempted to sue Chase for a violation of 15 U.S.C. § 1601, the Truth in Lending Act ("TILA"). Without argument, the district court declined to consider Oskoui's breach of contract claim and granted summary judgment to defendant Chase.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.  We reverse and remand.

**I**

In reviewing de novo the district court's decision, we view the evidence in the light most favorable to the nonmoving party.  *Olson v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

In 1990, Mahin Oskoui, a registered nurse, purchased a single-family home for herself in Los Angeles, California. Her down payment on the property was $250,000.  In 2007, the appraised value of the property was $1,250,000.  On March 27, 2007, she refinanced her acquisition with a loan from Washington Mutual Bank ("WaMu").  As security, she executed a promissory note and a deed of trust securing the note with the property.  At that time, WaMu was the United States' largest savings and loan association until it imploded in 2008 during the subprime mortgage crisis and the collapse of the so-called "housing bubble."  In turn, this debacle triggered massive loan defaults and a severe national economic recession.  The Office of Thrift Supervision closed WaMu on September 25, 2008, naming the Federal Deposit Insurance Corporation ("FDIC") as WaMu's receiver.  On September 25, 2008, the FDIC transferred WaMu's assets to defendant Chase.

In November 2008, Oskoui missed a loan payment, as did many homeowners in similar dire straits.  In January 2009, not knowing about WaMu's demise, she applied to WaMu for a loan modification.  On May 21, 2009, Chase sent her a letter offering her a "Trial Plan Agreement."  The letter did not advise her of what was required of a borrower or of a loan

for approval under the applicable modification rules, regulations, and guidelines. The letter did advise her that "[i]f you comply with all the terms of this Agreement, we'll consider a permanent workout solution for your loan once the Trial Plan has been completed." The only specified term of the Agreement was that Oskoui remit three equal payments of $3,280.05 to Chase between July and September 2009. Oskoui signed the Agreement on June 1, 2009.

Oskoui fully complied with the Agreement's payment term by timely sending $9,840.15 to Chase, only to be informed on November 10, 2009, that she did not qualify "at this time" for a modification under either the federal Making Home Affordable Program ("HAMP"), 12 U.S.C. § 5219(a), or the Chase Modification Program ("CHAMP") because "[y]our income is insufficient for the amount of credit you have requested." Her monthly income during that period was $10,575.00. Chase gave Oskoui no additional reasons for its denial even though its internal paperwork reveals two others, each apparently fatal to her attempt to modify her loan. One barrier was the unpaid principal balance on the loan – $833,000 – which was higher than the amount allowed under the HAMP Guidelines. This factor rendered her ineligible for a HAMP modification. The other barrier, which made her ineligible for CHAMP relief, was the loan's failure to satisfy Chase's net present value test ("NPV"). Chase's internal modification documents reveal that a person identified as "CHANG" determined on November 10, 2009 that Oskoui's application should be rejected. The document says, "denied – income insufficient and did not pass the npv calc test."

This test, which Chase did not reveal or explain in its November 10, 2009 letter, compares the NPV expected from a modification to the NPV of the unmodified loan. The test

compares cash flow from the modification to the cash flow expected from the absence of a modification. If the cash flow from a viable modification exceeds that of a non-modified loan, HAMP requires a servicer to offer a modification to a borrower. If the NPV test generates a negative result, modification is optional.

Not only did Chase fail to advise Oskoui that she was not eligible for these modifications, it told her instead that "we may be able to offer other alternatives to help avoid the negative impact" of foreclosure and a deficiency judgment. Chase failed to explain what its "other alternatives" were or what Oskoui would be required to demonstrate to qualify for them.

Given this enticing invitation, Oskoui tried again, by submitting in January 2010 another application for a loan modification. She had no inkling that Chase had already determined that she was not eligible because of the amount of the unpaid balance of the loan and the NPV problems with it.

On March 1, 2010, Chase responded by letter to Oskoui's new application. This letter said Chase "wants to help you stay in your home" and confirmed receipt and review of "your verification of income documentation." Included with the letter were three payment coupons and three return envelopes, each coupon in the amount of $2,988.49, and due on April 1, May 1, and June 1, 2010. The March 1, 2010 letter also stated on the first page: "After successful completion of the Trial Period Plan, CHASE *will send* you a Modification Agreement *for your signature* which *will* modify the Loan as necessary to reflect this new payment amount." (emphasis added). Chase said not a word about any concerns about her income and did not specify anything in

that regard as a condition precedent to a modification. The March 1, 2010 letter says on page 2, however, that "[i]f all payments are made as scheduled, we will consider a permanent workout solution for your Loan." This language on page 2, which is followed by bold type detailing the manner in which she should remit her payments, when read in the light of Chase's promise on page 1 creates at best a misleading ambiguity. Page 2 attempts to temper what Chase offered and promised on page 1: a Modification Agreement for her signature. Once again, as with Chase's November 10, 2009 letter, its March 1, 2010 letter, which Oskoui appended to her complaint as "Exhibit A," failed to alert her to her apparent ineligibility for a modification.

The next event in this drawn-out process came as quickly as night extinguishes the day. On March 2, 2010, one day after Chase's letter welcoming Oskoui for a second time to its Trial Period Plan ("TPP") and acknowledging receipt of her income verification documents, Chase sent her another letter telling her for the first time that she was *not* eligible for a federal HAMP modification "because the current unpaid principal balance on your Loan is higher than the program limit . . . ." Not only did the letter omit any reference to the fatal NPV test, it said that Chase was "happy" to tell Oskoui that she "may be eligible for other modification programs" and that Chase may be able to offer "other alternatives" to stave off "the negative impact a possible foreclosure may have on [her] credit rating, the risk of a deficiency judgment . . . and the possible adverse tax effects of a foreclosure . . . ." Oskoui took these consequences as menacing threats, not friendly legal advice. Chase's letter did not explain what its "other alternatives" were or what it would take to qualify for them. Also, Chase made no mention of the payments it had requested the previous day in its March 1, 2010 letter.

Because Chase had left the door open to relief and even urged her to do so, Oskoui diligently made – and Chase accepted – her monthly payments as solicited, not just for three, but for seven months.

On October 1, 2010, Oskoui sent a $2,988.49 payment to Chase. Nevertheless, on October 25, 2010, a foreclosure notice appeared on her front door, listing a foreclosure sale date of November 18, 2010. Remarkably, Chase allegedly sent her another letter dated November 1, 2010 encouraging her to continue to seek a modification. Chase even told her she might "qualify for monetary incentives that will be used to pay down the principal balance of your loan if you make your modified payments on time." At this point, Oskoui withdrew from the process. She was now $33,738.00 poorer with nothing to show for her efforts to comply with Chase's requests.

In a signed pro se declaration submitted to the district court in connection with Chase's motion for summary judgment, Oskoui explained her reluctance to continue the process any further.

> Defendants' actions have proven their lack of intention in modifying plaintiff's loan and putting her through an intense, stressful 2 years of agony and fear of losing her home which was not an ethical or just thing to do. The [October] payment was the last one plaintiff made, and she had stopped following the modification program that seemed to be a way for Chase to extract more money with the only purpose in mind of "[s]elf-enrichment." She had lost faith in Chase's modification

game and was also completely exhausted emotionally and physically between handling Chase's never-ending documents requests, foreclosure threats, her highly demanding job as a registered [n]urse and daily life's responsibilities . . . .

* * *

In fact, because of Plaintiff's advanced age, the damage done by Defendants has been more severe than it might have been for a younger person.  Since her profession requires emotional wellbeing in order to carry out her duty as RN.  She felt less than qualified to deal with other people's pain and life & death situations.  After 2 long years of modification drama, she still was put through the horrors and nightmares of post foreclosure ordeal. Fear of homelessness, and embarrassment in the closely-knit homeowners' community of her 25 year lived neighborhood.   Not to mention the trauma of this litigation.  All this, just because defendants' insatiable appetite for ENRICHMENT.

On January 4, 2011 – two years after her first application – Chase sent Oskoui a final letter denying her application, stating, "We are unable to offer you a modification through the federal Home Affordable Modification Program (HAMP) or any Chase modification programs . . . because you did not provide us with the documents we requested."

## II

Notwithstanding Oskoui's explanation of her understandable withdrawal from the exhausting two-year process, the district court granted Chase's motion for summary judgment on the ground that she had failed in late 2010 to provide Chase with the "requested documentation to support her loan modification request." The court declined to entertain her contractual claim because she had only "conclusorily" asserted that the "modification back-and-forth ripened into a contract with Chase" and remarked that she "sensibly" had not included a breach of contract claim in her first amended complaint.

## III

In denying Chase's Fed. R. Civ. P. 12(b)(6) motion to dismiss as to Oskoui's UCL claim, Judge George Wu remarked that Oskoui had indeed presented the court with a viable claim under California law for a fraudulent and an unfair business practice. Citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) ("A business practice is fraudulent under the UCL if members of the public are likely to be deceived."), Judge Wu said,

> Although Defendants express some uncertainty concerning the nature of Plaintiff's claims, she expressly includes a claim for unfair business practices, which the Court presumes (and Defendants have presumed) refers to a claim under California Business and Professions Code § 17200. The Court can conceive of Plaintiff's allegations satisfying both the "fraudulent" and "unfair"

prongs of a section 17200 claim. If what Plaintiff alleges is true – that Chase's left hand sought payments from Plaintiff pursuant to a plan designed to give her an opportunity to modify her loan while, notwithstanding Plaintiff's payment in accordance with that plan, Chase's right hand continued all along with foreclosure proceedings and *both hands* should have known from the start that Plaintiff's loan would not be eligible for modification in any event – the Court can conceive of such allegations stating a section 17200 claim.

Minutes of Hearing on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Oskoui v. JPMorgan Chase Bank, N.A., No. 2:12-cv-03511-FMO-AGR (C.D. Cal. Oct. 4, 2012), ECF No. 23 (footnote omitted).

We agree with Judge Wu's analysis. The facts we have arrayed plainly demonstrate a viable UCL claim.

The published HAMP Guidelines disqualified Oskoui from HAMP relief. In an age of computerized records, Chase no doubt had this disqualifying information at its fingertips and could have made this simple determination within a matter of minutes. But instead of determining eligibility *before* asking for money – a logical protocol called for by HAMP as of January 28, 2010 – Chase asked Oskoui for more payments. *See Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 924 n.4 (Cal. Ct. App. 2013) (citing U.S. Dep't of Treasury, HAMP Supplemental Directive No. 10-01 (Jan. 28, 2010)). And even when Chase told Oskoui the next day that she did not qualify for HAMP, it did not

inform her of her precarious situation concerning unexplained "other alternatives," preferring instead to accept payments for seven additional months.

Moreover, in Chase's words, she was "not eligible" for proprietary CHAMP modification because her debt to income ratio was "well over the 31% limit." Chase did not timely alert Oskoui to this problem or explain it in its March 2, 2010 letter. Two years after she began this journey and $33,738.00 out of pocket, Oskoui received nothing for her efforts. She argues that "[i]f Chase had told her she was not eligible for a loan modification, she never would have made those payments." This option should have been hers to exercise.

It boils down to this. With its March 1, 2010 letter, Chase deceptively enticed and invited Oskoui into a process with the demonstrably false promise that a loan modification was within her reach if she were to make three monthly payments of $2,988.49 each. The next day – and for the first time – Chase eliminated a HAMP modification from its menu, but neither advised Oskoui what the CHAMP Guidelines required nor suspended additional payments until it could determine her CHAMP eligibility. Chase now says in its brief that the CHAMP Guidelines did not have the HAMP loan balance limitation, but conspicuous by its absence in Chase's representation is any reference to the NPV test. Chase's counsel suggested during oral argument that Chase had a valid reason for continuing the process as it did, i.e., that Oskoui's income situation might have improved. On this record, any such expectation would have been patently unreasonable.

We can discern no acceptable utility in Chase's alluring "other alternatives" strategy or tactics. Whether Chase's

Kafkaesque conduct was intentional or the result of corporate ineptitude – as suggested by Judge Wu – the result is the same: The facts in this record would amply support a verdict on this claim in Oskoui's favor on the ground that she was the victim of an unconscionable process. Chase knew that she was a 68 year old nurse in serious economic and personal distress, yet it strung her along for two years, kept moving the finish line, accepted her money, and then brushed her aside. During this process, Oskoui made numerous frustrating attempts in person and by other means to seek guidance from Chase, only to be turned away.

**IV**

The district court erred in failing to acknowledge Oskoui's claim for breach of contract in her pro se complaint. She explicitly styled her complaint on its first page as one for "BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS." On page 4, she averred that:

> Once an offer of TPP was made to Plaintiff, Chase entered into a contract which was binding, superseding and implicitly having the effect of suspending the default condition that had existed between Plaintiff (alleged borrower) and Defendants . . . . Plaintiff successfully executed and met all terms outlined in the TPP and far exceeded all her obligations . . . . Plaintiff not only met all the financial obligations required by Chase but most importantly, provided ample documentation demonstrating her financial ability to qualify for a modification loan . . . .

On page 11, she said,

> In the absence of a valid reason for refusing to modify, it can logically be inferred, through Defendant's breach of the TPP contract, that it was simply extracting additional payments under the guise of a loan modification offer while still intending to foreclose.

Moreover, Oskoui attached to her complaint Chase's March 1, 2010 letter containing its representation that upon her successful completion of the TPP, Chase "will send you a Modification Agreement for your signature which will modify the loan as necessary to reflect this new payment amount."

The Seventh Circuit's opinion in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), which we identified in *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 880 (9th Cir. 2013) (per curiam) as "the leading federal appellate decision" on this issue of contract, illuminates the viability of Oskoui's claim. As in the case now before us, Wells Fargo argued in *Wigod* that its TPP language was not an enforceable offer because it was conditioned on Wells Fargo's further review of Wigod's financial information to ensure that she qualified under HAMP. *Wigod*, 673 F.3d at 561. The Seventh Circuit dismissed this contention as an unreasonable reading of the TPP. The court pointed out that the TPP spelled out two conditions precedent to Wells Fargo's obligation to *offer* a permanent modification, and that Wigod alleged that she fulfilled both conditions. *Id.* at 560–61. The court refused to allow other language in the TPP to nullify Wells Fargo's clear promise of an offer of a permanent

modification if Wigod complied with its conditions.  *Id.* at 562–63.

In *Bushell*, the California Court of Appeal identified *Wigod* as "provid[ing] guidance," and it followed the Seventh Circuit's approach to this issue.  220 Cal. App. 4th at 918–19. We also noted in *Corvello* that there is "no material difference" between California and Illinois law.  728 F.3d at 884.

Although its letter of November 3, 2010 thanks Oskoui for participating in the HAMP program, Chase now protests that it never offered a HAMP modification to Oskoui. There's the rub.  Once Oskoui made her three payments, Chase was obligated by the explicit language of its offer to send her *an Agreement* for her signature "which will modify the loan as necessary to reflect this new payment amount." Chase did not call it either a HAMP agreement or a CHAMP agreement, just an "Agreement."   What program the Agreement was part of is irrelevant.  Chase must abide by its own language.  It did not live up to its promise.  If Oskoui did not consider the offered modification to be acceptable, at that point she could have extracted herself from this aspect of her difficult situation instead of soldiering on towards a beckoning mirage.

Accordingly, we remand this issue to the district court with instructions to permit Oskoui to amend if necessary and to proceed with her complaint for a breach of contract.  *See Bushell*, 220 Cal. App. 4th 915.  *See also Corvello*, 728 F.3d 878; *Wigod*, 673 F.3d 547.

**V**

In her original complaint, Oskoui included a claim for a violation of the Truth in Leading Act.  Judge Wu dismissed this allegation pursuant to Fed. R. Civ. P. 12(b)6 for failure to state a claim.  Subsequently, the Supreme Court decided *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015).  The Court held that TILA gives a borrower the right to rescind certain loans, and that this right may be exercised by a written notice from the borrower to the lender within three years after the consummation of the transaction. Oskoui now asks for leave to amend her operative complaint to articulate a claim for rescission.  She asserts that she sent a TILA rescission letter to Chase in December 2009, within the three years required by the statute.  15 U.S.C. § 1635(f). Chase responds that its agreement with the FDIC protects it from any liability WaMu may have had in connection with its previous business.  Oskoui says not so because she sent her rescission letter to Chase, not to WaMu.

This dispute is best resolved in the district court. Accordingly, we remand with instructions to permit Oskoui to amend her complaint to allege a right to rescind pursuant to *Jesinoski*.    However, this permission to amend is conditional on her prompt delivery to the court of the "rescission" letter of December 2009 to which she refers in her brief.

**REVERSED** and **REMANDED** for further proceedings.