**Kathleen SOULE, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**HILTON WORLDWIDE, INC. and Doe, Defendants 1–50, Defendant.**

**Civ. No. 13–00652 ACK–RLP.**

United States District Court, D. Hawai'i.

Signed Feb. 26, 2014.

Brandee J. Faria, John F. Perkin, Michelle Lee Premeaux, Perkin & Faria, James J. Bickerton, Bickerton Lee Dang & Sullivan, Honolulu, HI, Hassan A. Zavareei, Tycko & Zavareei LLP, Washington, DC, for Plaintiffs.

Angela C. Agrusa, Liner LLP, Randall J. Sunshine, Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, Los Angeles, CA, Margery S. Bronster, Rex Y. Fujichaku, Bronster Hoshibata, Attorneys at Law, A Law Corporation, Honolulu, HI, for Defendant.

### *ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO STRIKE*

### *PROCEDURAL BACKGROUND*

ALAN C. KAY, Senior District Judge.

On November 5, 2013, Plaintiff Kathleen Soule ("Plaintiff" or "Soule") filed a First Amended Complaint ("FAC") on behalf of herself and all others similarly situated against Hilton Worldwide, Inc. and Doe Defendants 1–50 ("Defendant" or "Hilton") in the Circuit Court of the First Circuit, State of Hawaii. Notice of Removal at ¶ 2,

ECF No. 1. Hilton removed to this Court on November 27, 2013. Notice of Removal, ECF No 1.

Plaintiff's FAC pleads two claims arising out of alleged wrongs suffered by consumers who reserved Hilton hotel accommodations through Hilton.com and other third-party websites: (1) violation of Hawaii Revised Statutes § 480 et sect.[1]; and (2) unjust enrichment. FAC at 14, ¶¶ 75–90.

Hilton filed the instant Motion to Dismiss ("Motion" or "Def.'s Mot.") on December 4, 2013, pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6). ECF No. 9. On January 28, 2014, Plaintiff filed an Opposition to Defendant's Motion ("Pl.'s Opp."). ECF No. 22. Also on January 28, 2014, Plaintiff filed a motion to strike the declaration of Kathryn O'Leary and Exhibit 1 attached thereto, which were filed in support of Defendant's Motion. ECF No. 23. The Court issued a minute order stating that "Plaintiff's Motion to Strike will be considered at the hearing for the underlying Motion to Dismiss" and "Defendant's opposition to Plaintiff's motion to strike should be filed by the due date for its reply to the underlying Motion to Dismiss." ECF No. 25. On February 4, 2014, Defendant filed its Reply. ECF No. 26. Also on February 4, 2014, Defendant filed an opposition to Plaintiff's Motion to Strike. ECF No. 27.

This Court held a hearing regarding Defendant's Motion on February 18, 2014.

**FACTUAL BACKGROUND**[2]

**A. Hilton's Resort Fee**

Hilton owns and operates 3,900 hotels around the world, including eight in Hawaii. FAC at 8–9, ¶¶ 31–32. At some of its Hawaiian hotels, Hilton charges a mandatory "resort fee" in addition to the disclosed room rate. Id. at 9, ¶¶ 33–34. Hilton purports to charge this fee for "amenities," which may include local and toll-free phone calls, high-speed internet, wireless internet connections, access to movies and games, and audio tours. Id. ¶ 35 & Ex. A at 2.

The proposed class is defined as: "All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were charged one or more resort fees at a Hilton property in the state of Hawaii (the 'Class')." Id. at 5, ¶ 19. Plaintiff and all class members were charged the resort fee after booking a hotel through Hilton's website, Hilton.com, or other websites. Id. at 9, ¶ 36. Hilton uses a uniform system of disclosures and procedures for reservations at every one of its Hawaiian properties. Id. ¶ 37. On Hilton's and third-party websites, consumers enter either manually or through a drop-down box their destination and requested lodging dates. Id. ¶ 38. Consumers are then directed to a booking page which displays room options and prices. Id. After book-

---

1. Plaintiff entitles its first claim as "Violation of Hawaii's Uniform Deceptive Trade Practice Act." The Court notes that Act is codified as "H.R.S. § 481A." See Haw.Rev.Stat. Ann. § 481A (2012). However, Plaintiff's first claim cites repeatedly to H.R.S. § 480–2. The Court finds that Plaintiff's FAC is clearly alleging a violation of H.R.S. § 480–2 and, therefore, will construe Plaintiff's first claim in the FAC as referring to a violation of § 480–2. Both parties in their memorandums have addressed § 480–2 but not § 481A.

2. The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings. For purposes of this Motion, the Court accepts as true all well-pleaded factual allegations in the FAC, but need not accept as true allegations that contradict the FAC's exhibits or documents incorporated by reference. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir.2008)

ing a hotel room, Hilton typically sends consumers a confirmation email breaking down the "Rate Per Night" to give a "Total for Stay." *Id.* ¶ 39 & Ex. A.

On January 31, 2013, Soule made a reservation through Hilton.com for a two-night stay at the Hilton Hawaiian Village Waikiki Beach Resort ("Waikiki Resort"). FAC at 9, ¶ 40. Hilton quoted her a rate of $237.15 per night, plus taxes of $66.21, for a total of $540.51. *Id.* at 10, ¶ 41. After booking the room through Hilton's website,[3] Soule saw the following in a confirmation email from Hilton[4]:

**Rate Information:**
Rate Type:
 ANY WEEKEND ANYWHERE
Rate per night: 237.15 USD
Total for Stay per Room:
 Rate 474.30 USD
 Taxes 66.21 USD
 Total 540.51 USD

**Total for Stay:** **540.51 USD**
Includes estimated taxes and service charges. (Gratuities not included.)

**Tax:**
● There is a 4.71% per room per night tax and a 9.25% per room per night secondary tax.

**Resort Charges:**
● Daily Resort Charge of $25.00 plus tax per room, per night will be added to the room rate and includes: Local, Toll–Free and Credit Card calls (no access fee); High Speed Internet access/WIFI access; PlayStation 3 with Unlimited Movies and Games; Hawaiian Cultural Activities and Resort Audio Tour.

**Additional Charges:**
● Valet parking: $33.00/night Self parking: 27.00/night

. . .

**Rate Rules and Cancellation Policy:**

. . .
● Your reservation is non-refundable, non-cancelable and non-changeable.
● Your credit card will be charged immediately for the total amount shown for the entire stay as reserved.

*Id.* Ex. A at 2.

3. Neither party has provided the Court with reproductions from Hilton's website or booking page revealing what Plaintiff saw when she used Hilton.com to reserve a hotel room; although, the Court notes that at the January 10, 2014 scheduling conference, Plaintiff and Defendant "agreed that Plaintiff may performed limited *written* discovery on 'resort fee' disclosures." ECF No. 13 at 2 (Report of the Parties' Planning Meeting). The parties agreed that such disclosures may include "any and all representations made prior to or during the booking process ... including ex-

Soule booked the room using Hilton's emplar documents that show the 'screen-flow' or booking process in the form of screen shots." *Id.*, n. 1. Plaintiff's counsel at the February 18, 2014 hearing represented that Plaintiff had made a written request for these documents but that Hilton had not produced them. Rough Transcript of Hearing at 18–19. As a result, it is unclear what information Plaintiff saw on Hilton's website and/or booking page.

4. The font has been scaled up to 12 point font for purposes of this Order.

"Any Weekend Anywhere" sale rate. *Id.* Per the Any Weekend Anywhere "Rate Rules and Cancellation Policy," Hilton charged Soule's credit card $540.41 immediately after she booked the Waikiki Resort room online. *Id.* As indicated above in the confirmation email, the Rate Rules and Cancellation Policy also stated that Plaintiff's reservation was "non-cancelable." *Id.* When Soule checked out of the hotel, Hilton imposed a resort fee of $25.00 per night in addition to the amount she already had paid to Hilton for the reservation. *Id.* at 10, ¶ 45.

## B. FTC Warning Letter [5]

On November 26, 2012, the Federal Trade Commission ("FTC") sent a "Warning Letter" to 22 hotel operators warning that their online reservation sites may violate the law by providing a misleading estimate of what consumers can expect to pay for their hotel rooms. FAC Ex. B. The Warning Letter notes consumer complaints about mandatory resort fees. *Id.* at 1. Specifically, "consumers complained that they did not know that they would be required to pay resort fees in addition to the quoted hotel room rate" and only learned of the fees after they arrived at the hotel. *Id.* After reviewing a number of online hotel reservation sites, the Warning Letter states that some hotels do not adequately inform consumers about the existence of resort fees. *Id.* The FTC concludes that these practices may violate the law by misrepresenting the price consumers can expect to pay and, accordingly, online hotel reservation sites should include in the quoted total price any mandatory resort fees. *Id.* at 2.

## STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir.1988).

In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir.2012). The complaint must contain sufficient factual matter accepted as true to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

---

**5.** Hilton urges the Court to "disregard" the FTC Warning Letter. Def.'s Mot. at 15–17. The Court agrees with Hilton that the Warning Letter is neither an "agency decision" nor a "definitive statement of position." *F.T.C. v. Standard Oil Co.*, 449 U.S. 232, 241 & 246, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). However, as discussed in Part A of the "Discus-sion" section of this Order, the Court may consider certain materials outside the complaint. While a FTC Warning Letter is not binding law, the Court determines that it may consider the document when evaluating the plausibility of Plaintiff's claim that a reasonable consumer is likely to be misled by Hilton's practices.

and plausibility of entitlement to relief.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955). However, in considering a motion to dismiss, "the court is not deciding whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted." *Tedder v. Deutsche Bank Nat. Trust Co.,* 863 F.Supp.2d 1020, 1030 (D.Haw.2012) (citing *Twombly,* 550 U.S. at 563 n. 8, 127 S.Ct. 1955).

Should a claim be dismissed, the court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1079 (9th Cir.2012).

## B. Applicability of Rule 9(b)

Hilton argues that Plaintiff's claims are subject to Rule 9(b)'s heightened pleading requirement. Def.'s Mot. at 8. Rule 9(b) imposes a heightened pleading standard on a party alleging fraud and requires the party to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "Averments of fraud must be accompanied by the 'who, what, when, where and how' of the misconduct charged." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir.2009). Rule 9(b) "demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (internal quotations omitted).

▬ This district court has previously held that "where a Chapter 480 claim is

based on fraudulent acts, a plaintiff must plead with particularity." *Long v. Deutsche Bank Nat. Trust Co.,* No. CV 10–00359 JMS/KSC, 2011 WL 2650219 at *7 (D.Haw. July 5, 2011); *see also Smallwood v. NCsoft Corp.,* 730 F.Supp.2d 1213, 1232–33 (D.Haw.2010) (relying on *Kearns* to find that Chapter 480 claims that sound in fraud must be plead with particularity).[6] In this case, some of Plaintiff's allegations in support of his H.R.S. § 480–2 claim sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading standard: Plaintiff alleges, inter alia, that Hilton's assessment and collection of resort fees is "unfair and unconscionable" and that its "conduct of misrepresenting, concealing, suppressing, or otherwise omitting the [resort fees] created a likelihood of confusion or of misunderstanding." FAC at 1 & 14, ¶¶ 1, 81.

▬ As the Ninth Circuit in *Kearns* makes clear, however, "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Kearns,* 567 F.3d at 1125 (quoting *Vess,* 317 F.3d at 1105). To the extent Plaintiff is making claims under the "unfair" prong of an unfair and deceptive practices claim that are not asserting fraudulent conduct, Rule 9(b)'s heightened pleading standard does not apply. *Id.* Rather, Plaintiff's "allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess,* 317 F.3d at 1105.

### DISCUSSION

## A. Consideration of Materials Outside the Complaint

"Generally, the scope of review on a motion to dismiss for failure to state a

---

**6.** The Ninth Circuit has also "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of"

similar California consumer protection statutes. *Kearns,* 567 F.3d at 1125.

claim is limited to the contents of the complaint." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the documents; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* The court is allowed to treat such documents as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

The Ninth Circuit has extended the "incorporation by reference" doctrine to situations in which a plaintiff does not explicitly allege the contents of the documents if "the plaintiff's claim depends on the contents of [the] document" and "the parties do not dispute the authenticity of the document." *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir.2005). The doctrine is intended to prevent plaintiffs from "surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998).

■ In this case, the Court may consider the confirmation email Plaintiff received after booking the Waikiki Resort hotel room and the FTC's November 26, 2012 Warning Letter. FAC Exs. A & B. Plaintiff refers extensively to the confirmation email and Warning Letter in the FAC. *See* FAC at 10–13, ¶¶ 42, 46, 49, 51, 53, 55, 60–63. Both documents are also central to Plaintiff's claim that Hilton did not adequately disclose to consumers the existence of mandatory resort fees and neither party questions the documents' authenticity.

Similarly, the Court can consider the copy of the hotel bill related to Plaintiff's two-night stay at the Waikiki Resort. Def.'s Mot. Ex. 2. The FAC references "an additional 'mandatory' resort fee of $25 per night" imposed by Hilton at checkout. FAC at 13, ¶ 69. The document is also essential to Plaintiff's claim that Hilton charges these mandatory resort fees at checkout and before properly disclosing their existence to consumers. Like the confirmation email and FTC Warning Letter, neither party questions the hotel bill's authenticity. Plaintiff also did not object to Hilton's introduction of the document in her Opposition to Defendant's Motion.

Finally, the Court concludes that it may consider Exhibit A of Defendant's Reply, which is a copy of the "Global Terms and Conditions" associated with the "Any Weekend Anywhere" sale rate and accompanying declaration by Nancy Deck. Decl. of Deck & Def.'s Reply Ex. A.[7] Although Plaintiff contends that she never referred to the document in her complaint, Plaintiff's FAC does quote a portion of the Any Weekend Anywhere "Rate Rules and Cancellation Policy." *See* FAC at 11, ¶ 55. Even assuming Plaintiff did not explicitly allege the contents of the document, the Ninth Circuit has extended the "incorporation by reference" doctrine to "situations in which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel,* 393 F.3d at 1076.

**7.** Plaintiff has filed a separate motion to strike Exhibit 1 of Defendant's Motion and accompanying Declaration of Kathryn O'Leary. ECF No. 23. Plaintiff filed her motion to strike on the same day as her Opposition to the underlying Motion to Dismiss. ECF No. 22. In the interest of judicial economy and efficiency, the Court considers Plaintiff's motion at the same time as the underlying Motion to Dismiss.

Here, Plaintiff's H.R.S. § 480–2(a) claim depends on the contents of Exhibit A because Plaintiff's allegations are predicated on Hilton's failure to disclose the existence of mandatory resort fees during the booking process. The Global Terms and Conditions state in relevant part: "Unless otherwise stated, quoted rates are per room per night, based on double occupancy and do not include taxes, gratuities, resort fees or incidental charges." Def.'s Mot. Ex. 1. If the Global Terms and Conditions were properly disclosed to Plaintiff during the booking process, they would impact her claim that Hilton "intentionally omit[s]" mandatory resort fee charges during the booking process. FAC at 2, ¶ 2.

While Plaintiff disputes the authenticity of Exhibit 1 and accompanying declaration by Kathryn O'Leary, the Court finds that Hilton addressed Plaintiff's concerns when it submitted a new, internal copy of the Global Terms and Conditions along with a declaration by Nancy Deck. *See* Pl.'s Mot. to Strike at 1.[8]

Plaintiff argued in her Motion to Strike that the document was not authentic because "O'Leary does not establish personal knowledge of the content of Exhibit 1, how the Hilton website was operated, how the disclosures were supposedly made available to users (or when they were made available), much less personal knowledge of how [the third-party Internet archive website] created or maintained the documents on its website." *Id.* at 5. The Declaration of Nancy Deck sufficiently addresses Plaintiff's concerns over the document's authenticity. Nancy Deck establishes personal knowledge of the content of the Global Terms and Conditions by specifically declaring that "[a]ll the facts set forth below are personally known to me." Decl.

of Deck ¶ 1. Furthermore, Hilton provided a new, internal copy of the Global Terms and Conditions in order to alleviate Plaintiff's concerns that the document was simply taken from an unreliable third-party Internet archive website. Plaintiff's remaining arguments that the O'Leary Declaration does not address how the Hilton website was operated or how the disclosures in the Global Terms and Conditions were supposedly made available to consumers go to the weight of the evidence, rather than its authenticity. Accordingly, the Court DENIES Plaintiff's motion to strike.

Notwithstanding the Court's determination that it may consider Exhibit A and accompanying declaration by Nancy Deck, for the purposes of this Motion to Dismiss the Court does not give any weight to the purported disclosure of mandatory resort fees contained in the Global Terms and Conditions document. Specifically, there is nothing in the record indicating that Plaintiff was directed to or otherwise had access to a webpage listing the Global Terms and Conditions. The Declaration of Nancy Deck asserts that the Global Terms and Conditions for the Any Weekend Anywhere sale rate could be accessed via a "hyperlink [ ] found on various webpages on Hilton.com, including booking pages." Decl. of Deck. However, the Ninth Circuit has consistently held that consideration of extrinsic evidence converts a Rule 12(b)(6) motion into a motion for summary judgment. *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001). For the Court to consider this assertion by Nancy Deck, the Court would have to convert the present Motion to Dismiss into a motion for summary judgment. The Court at this late date will not convert

---

**8.** The Court also notes that Plaintiff's counsel at the February 18, 2014 hearing did not address whether Plaintiff still objected to the new copy of the Global Terms and Conditions

and accompanying declaration by Nancy Deck, which Hilton submitted in its Reply brief.

Defendant's Motion to Dismiss into a motion for summary judgment and thus will not consider the hyperlink allegedly found on various webpages on Hilton's website. Accordingly, the Court finds that Exhibit A of Plaintiff's Reply fails to establish that Hilton disclosed to Plaintiff prior to or at the time of booking the existence of mandatory resort fees.

## B. H.R.S. § 480–2(a) Claim

In her first cause of action, Plaintiff alleges that Hilton violated H.R.S. § 480–2(a) which prohibits "unfair methods of competition and unfair or deceptive acts or practices." Plaintiff alleges that Hilton violated the statute by failing to adequately disclose to consumers the existence of resort fees. FAC at 10, ¶¶ 43–45. Plaintiff further alleges that Hilton's practice of understating its true base room rates and concealing the mandatory nature of the resort fees is deceptive. *Id.* at ¶¶ 47–48. In response, Hilton argues that Plaintiff's claim fails as a matter of law because Hilton explicitly disclosed the existence and amount of the resort fee before Plaintiff's stay at the Waikiki Resort. Def.'s Mot. at 1. Hilton further argues that "courts routinely dismiss consumer complaints at the pleading stage where, as here, the defendant's disclosures about resort fees or other similar fees are not likely to mislead reasonable consumers." *Id.* at 3.

H.R.S. § 480–2(a) provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce is unlawful." H.R.S. § 480–2(b) further provides that "[i]n construing this section, the courts ... shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."

H.R.S. § 480–2 "was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest business[persons]." *Hawaii Community Federal Credit Union v. Keka,* 94 Hawai'i 213, 228, 11 P.3d 1, 16 (Haw.2000) (alteration in original). Consequently, a failure to disclose relevant information may be actionable under this statute if it is likely to mislead or deceive a reasonable consumer. *See Courbat,* 111 Hawai'i at 263, 141 P.3d 427.

As a preliminary matter, the Court notes that the wording of H.R.S. § 480–2(a) "indicates that its prohibition is directed at two separate types of activity: unfair methods of competition and unfair or deceptive acts or practices." *Dash v. Wayne,* 700 F.Supp. 1056, 1058 (D.Haw. 1988). Accordingly, the Court determines that "each cause of action must be analyzed separately." *Id.; see also Paulson, Inc. v. Bromar, Inc.,* 775 F.Supp. 1329, 1337–39 (D.Haw.1991) (analyzing plaintiff's H.R.S. § 480–2 claim under both clauses of the statute). The Court will first address whether Plaintiff adequately pled an "unfair methods of competition" claim and then address whether Plaintiff adequately pled an "unfair or deceptive practices" claim.

### 1. Whether Plaintiff Adequately Pleads an Unfair Methods of Competition Claim

In *Hawaii Medical Association v. Hawaii Medical Service Association, Inc.,* the Hawaii Supreme Court considered what a plaintiff must allege in order to bring an action for unfair methods of competition under H.R.S. § 480–2. 113 Hawai'i 77, 148 P.3d 1179 (Haw.2006). The Court concluded that a plaintiff "may bring claims of unfair methods of competi-

tion based on conduct that would also support claims of unfair or deceptive. acts or practices." *Id.* at 111, 148 P.3d 1179. However, the Court held that "the nature of the competition [must be] sufficiently alleged in the complaint." *Id.* at 113, 148 P.3d 1179. The Hawaii Supreme Court reasoned that if it did not require a plaintiff to plead the nature of the competition, "the distinction between claims of unfair or deceptive *acts or practices* and claims of unfair *methods of competition* that are based on such acts or practices would be lost," because "the existence of competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition." *Id.* at 111–12, 148 P.3d 1179 (emphasis in original).

The Hawaii Supreme Court in *Hawaii Medical Association* found that the plaintiff "sufficiently alleged the 'nature of the competition,' according to the Court, because it described the competition at issue in great detail." *Davis v. Four Seasons Hotel Ltd.*, Civ. No. 08–00525 HG–LEK, 2010 WL 3946428 at *7 (D.Haw. Sept. 30, 2010). "Specifically, HMA alleged that:

11. [HMSA's] conduct has adversely impacted, and continues to adversely impact, members of [HMSA's] plans by, among other things, (a) imposing financial hardships on, and in some cases threatening the continued viability of, the medical practices run by [the plaintiffs]; (b) threatening the continuity of care provided to patients by [the plaintiffs], as required by sound medical judgment; (c) requiring [the plaintiffs] to expend considerable resources seeking reimbursement that could otherwise be available to provide enhanced healthcare services to [HMSA's] plan members; (d) making it more costly and difficult for [the plaintiffs] to maintain and enhance the availability and quality of care that all patients receive; and (e) increasing the costs of rendering health-

care services in Hawaii as a result of the additional costs incurred and considerable effort expended by HMA members in seeking reimbursement from HMSA for services rendered ...

25. *Through its market dominance and oppressive conduct,* HMSA has improperly and unfairly attempted to impose unconscionably low reimbursements upon physicians. Thus physicians are forced to either accept the unconscionably low reimbursement rates or to simply not contract with HMSA.

26. HMSA dominates the enrollee market in Hawaii with over 65% of Hawaii's population enrolled in one of HMSA's plans. In this regard, HMSA is the largest provider of fee-for-service insurance in the State with more than 90% of the market and is the second largest HMO provider in the State ...

27. *It is through such market dominance that HMSA is able to dictate the terms and amount of reimbursement HMA physicians will receive.*

*Davis v. Four Seasons Hotel Ltd.*, Civ. No. 08–00525 HG–LEK, 2010 WL 3946428 at *7–*8 (quoting *Hawaii Medical Association*, 113 Hawai'i at 112, 148 P.3d at 1214) (emphasis in original).

In *Davis*, the Hawaii Supreme Court clarified the required elements for bringing an action for unfair methods of competition claim under H.R.S. § 480–2. *Davis v. Four Seasons Hotel Ltd.*, 122 Hawai'i 423, 228 P.3d 303, 325 (2010). The Hawaii Supreme Court in *Davis* determined that:

(1) Plaintiffs qualify as persons who may bring a claim under H.R.S. § 480–2(e);

(2) Plaintiffs have standing to bring a private claim for unfair competition under H.R.S. §§ 481B–14 and 480–2 only if they satisfy the requirements of § 480–13;

(3) The essential elements of a claim under § 480–13 are: (1) a violation of Chapter 480; (2) that causes an injury to plaintiffs' business or property; and (3) damages. To satisfy the second element, plaintiffs must allege an injury in fact and the nature of the competition.

. . .

(6) Plaintiffs must ultimately show that their injury necessarily stems from the negative effect on competition caused by the violation, as opposed to some pro-competitive or neutral effect of the defendant's antitrust violation.

*Id.*

The Hawaii Supreme Court in *Davis* also noted that "Hawaii's consumer protection laws are also intended to preserve competition." *Id.* at 326. "Embodied in Hawaii's virtually word-for-word adoption of the prohibitions contained in the Sherman, Clayton, and FTC acts is the federal antitrust laws' focus on commerce, the economy, and competition." *Id.* "Hawaii's requirement that a plaintiff allege the 'nature of the competition' in his or her complaint . . . is consistent with the federal requirements that a plaintiff allege that his or her injury 'reflects the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation'" and "reflects the underlying purpose of both the federal and Hawaii antitrust laws, which is to preserve unrestrained competition." *Id.*

■ In this case, Plaintiff advances insufficient factual allegations to support a claim that Hilton's failure to disclose resort fees and their mandatory nature has a negative effect on competition that harms consumers like Soule. The only real reference to the "nature of the competition" in the First Amended Complaint is in Paragraph 3, which provides in pertinent part:

During the booking confirmation process, Hilton room rates intentionally omit certain mandatory charges, in an effort to make Hilton hotels appear less expensive than they actually are. Consumers making internet bookings are deceived into choosing Hilton hotel rooms, the true price of which is not revealed. In fact, Hilton uses 'resort fees' to indirectly and deceptively raise base room rates without ever informing consumers about the price hike.

FAC at 2, ¶ 3. Although Plaintiff alludes to the nature of the competition, she fails to describe the nature of competition with particularity and, additionally, to demonstrate that her injuries "stem from the negative effect on competition caused by the violation, as opposed to some pro-competitive or neutral effect of [Hilton's] antitrust violation." *Davis*, 2010 WL 3946428 at *11.

Plaintiff's counsel at the February 18, 2014 hearing stated that an unfair methods of competition claim was "not a focus of this case," and that he only brought it up because the Court had mentioned it. Rough Transcript at 28–30, 37. Nonetheless, Plaintiff's counsel then argued what he viewed as the nature of the competition and resulting harm to consumers. Rough Transcript of Hearing at 28–30, 37. Plaintiff's counsel brought to the Court's attention that a recently argued case before the Hawaii Supreme Court could establish that a plaintiff is not required, under *Davis*, to allege an "antitrust type injury." Rough Transcript of Hearing at 29. Nevertheless, *Davis* is the principle case that the Court now has before it and, therefore, is bound by its holding that Plaintiff must show that her injury stems from the negative effect on competition caused by the violation, as opposed to some pro-competitive or neutral effect of the defendant's antitrust violation. *Davis*, 228 P.3d at 325.

Because the "nature of the competition" was not adequately alleged in Plaintiff's FAC, Plaintiff's unfair method of competi-

tion claim is dismissed without prejudice. *See Queen's Medical Center v. Kaiser Foundation Health Plan, Inc.*, 948 F.Supp.2d 1131, 1163 (D.Haw.2013) (dismissing plaintiff's unfair methods of competition claim because Plaintiff merely alleged that defendants operated in the same industry "without providing any allegations as to the nature of the competition between plaintiff and either [defendant]"). Since Plaintiff may be able to provide further allegations to address this defect, the Court grants leave to amend.

### 2. Whether Plaintiff Adequately Pleads an Unfair or Deceptive Practices Claim

■■ The Hawaii Supreme Court has described a deceptive act or practice as having the "capacity or tendency to mislead or deceive." *Courbat v. Dahana Ranch, Inc.*, 111 Hawai'i 254, 261, 141 P.3d 427, 434 (Haw.2006) (citation omitted). More specifically, a deceptive act or practice is "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission or practice is material." *Id.* at 262, 141 P.3d 427. "A representation, omission, or practice is considered 'material' if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.*

Hawaii courts have further explained that "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Tokuhisa*, 122 Hawai'i 181, 194, 223 P.3d 246, 259 (Haw.Ct.App.2009)

■ In general, "[t]he question of whether an unfair or deceptive trade practice exists is a question of fact." *Kukui Nuts of Hawaii Inc. v. Baird & Co., Inc.*, 7 Haw.App. 598, 612, 789 P.2d 501, 511 (Haw.Ct.App.1990); *see Balthazar v. Verizon Hawaii, Inc.*, 109 Hawai'i 69, 72, 123 P.3d 194, 197 n. 4 (Haw.2005) ("The question of whether a practice constitutes an unfair or deceptive trade practice is ordinarily a question of fact."); *see also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir.2012) (interpreting similar California consumer protection statute and holding that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss")

■ Plaintiff's unfair or deceptive practices claim turns on whether Hilton adequately disclosed to consumers the existence of mandatory resort fees.[9] Because Plaintiff could not cancel her reservation after she provided Hilton with her credit card information and Hilton charged her for the amount shown in the Total for Stay, any disclosure of mandatory resort

---

9. Plaintiff's FAC and Opposition to Defendant's Motion argue extensively that Hilton made "affirmative misrepresentations" regarding the existence of the resort fees and their mandatory nature. *See, e.g.*, FAC at 10, ¶¶ 43–45, 49–50, 51–52; Pl.'s Opp. at 1, 3–4. For instance, Plaintiff argues that Hilton stated the Total for Stay "[i]ncludes estimated taxes and service charges," but that Hilton did not consider resort fees as "service charges." Pl.'s Opp. at 19. The statements that Plaintiff alleges constitute "affirmative misrepresentations" are contained in the confirmation email Plaintiff received after booking the Waikiki Resort room online. *See* FAC Ex. A. Because Plaintiff's reservation was "non-cancelable" once she provided Hilton with her credit card information and Hilton charged her the amount shown in the Total for Stay, the issue remains whether at the time of booking Hilton sufficiently disclosed the existence of resort fees. Accordingly, for purposes of this Motion to Dismiss the Court will not now address Plaintiff's argument that the affirmative misrepresentations in the confirmation email are likely to mislead a reasonable consumer in violation of H.R.S. § 480–2(a).

fees must have been made by Hilton prior to or at the time of booking. Hilton points to three purported disclosures in order to establish that it "clearly disclosed" that a mandatory resort charge will be added to the room rate. Def.'s Mot. at 13.

First, Hilton points to the Global Terms and Conditions which are set forth on a separate website and are associated with the Any Weekend Anywhere sale rate and accompanying declaration by Nancy Deck. Decl. of Deck; Def.'s Reply Ex. A at 1 ("Global Terms & Conditions for Any Weekend, Anywhere Sale 2012–2013"). Specifically, the second full paragraph of the Global Terms and Conditions provides in relevant part: "Unless otherwise stated, quoted rates are per room per night, based on double occupancy and do not include taxes, gratuities, resort fees or incidental charges." Def.'s Mot. Ex. 1. As discussed above, there is nothing in the record that indicates Plaintiff was able to view the full Any Weekend Anywhere sale rate Global Terms and Conditions, or was otherwise directed to a website containing the rate's Global Terms and Conditions. The Declaration of Nancy Deck does assert that the Global Terms and Conditions could be accessed via hyperlinks that were available on various webpages on Hilton.com. Decl. of Deck; Def.'s Reply Ex. A. However, for the Court to consider this assertion, the Court would have to convert the present Motion to Dismiss into a motion for summary judgment. *See Lee*, 250 F.3d at 688. As discussed above, the Court at this late date will not convert Defendant's Motion to Dismiss into a motion for summary judgment. Accordingly, Hilton's purported disclosure of mandatory resort fees in the Any Weekend Anywhere Global Terms and Conditions cannot be a basis for dismissing Plaintiff's unfair or deceptive practices claim.

Second, Hilton argues that the email confirmation Soule received after booking her two-night stay at the Waikiki Resort "clearly disclosed that a 'Daily Resort Charge of $25.00 plus tax per room, per night *will be added* to the room rate.'" Def.'s Mot. at 13 (quoting FAC Ex. A) (emphasis in original). Although the statement was under a bold heading entitled "Resort Charges" and a few inches under the "Total for Stay," the statement in the confirmation email was not disclosed to Soule prior to or at the time she booked the Waikiki Resort room. Rather, the confirmation email was sent after her credit card had already been charged. Per the "Rate Rules and Cancellation Policy," Soule's credit card was charged immediately after she booked the hotel room for $540.41, the "Total for Stay," and Soule could not cancel or change the reservation. FAC Ex. 1. In other words, nothing in Plaintiff's factual allegations indicate that she had the ability to view the resort fee charge language found in the confirmation email before she entered her personal and credit card information.

Finally, Hilton points to the fact that at the time of Plaintiff's checkout "two daily resort charges of $25.00 were clearly listed on Plaintiff's [hotel] bill." Def.'s Mot. at 6. Once again, since the record before the Court for this Motion to Dismiss does not include reproductions from Hilton's website or booking page, there is nothing to show that Hilton disclosed the existence of mandatory resort fees prior to or at the time of booking; Plaintiff's credit card had already been charged for the amount shown in the Total for Stay and her reservation was noncancelable, prior to her receiving the final bill (as well as the email confirmation). Thus, any disclosure through the check-out bill cannot be a basis for dismissing Plaintiff's unfair or deceptive practices claim.

Hilton further argues that "[c]ourts routinely dismiss consumer complaints at the

pleading stage where, as here, the defendant's disclosures about resort fees or other similar fees are not likely to mislead reasonable consumers." Def.'s Mot. at 3. In particular, Defendant relies on two unpublished federal district court cases dealing directly with hotel resort fee disclosures: *Ford v. Hotwire* and *Harris v. Las Vegas Sands L.L.C.,* No. CV–12–10858 DMG(FFMx), 2013 WL 5291142 (C.D.Cal. Aug. 16, 2013).

In *Ford,* a consumer filed a complaint against Hotwire, a third-party hotel booking website, alleging Hotwire violated several California consumer protection statutes when it failed to disclose to consumers during the booking process the existence of mandatory resort fees. *Ford,* 2008 WL 5874305 at *1–2. The district court granted Hotwire's motion to dismiss because Hotwire "adequately disclose[d] that resort fees may be imposed, such that a reasonable customer is not likely to be deceived." *Id.* at *4.

The court summarized Plaintiff's transaction with Hotwire as follows:

(1) Customers provide Hotwire with criteria for the desired travel, such as dates and locations.

(2) Hotwire provides a list of prices for various hotels matching the criteria. The list indicates the hotels' ratings, but not their specific identity.

(3) Customers may then select a hotel and pay for their stay after confirming that they agree to the Terms of Use.

(4) Once the purchase is finalized, and therefore nonrefundable under the Terms of Use, Hotwire discloses the identity of the hotel selected.

*Id.* at *2–3 (internal citations omitted). As noted in paragraph "(3)," a Hotwire customer submits payment after agreeing to the Hotwire "Terms of Use." *Id.* at *3. A customer indicates his agreement to the Hotwire Terms of Use by clicking a box and acknowledging that: " 'I have read,

understood, and accept the Hotwire Terms of Use Agreement.' " *Id.* at *2. The court noted that "[t]he phrase 'Hotwire Terms of Use Agreement' is a hyperlink that connects directly to the complete provision of the Terms of Use." *Id.* The Hotwire Terms of Use stated that "Hotwire rates do not include special fees charged by hotels upon check-out (e.g., ... resort fees)." *Id.* "Customers will be required to pay these fees directly to the hotels at check-out time." *Id.* Because Hotwire explicitly disclosed that its quoted rate did not include certain charges, including resort fees, the court dismissed the consumer's complaint for failing to state a claim for relief under California's consumer protection laws. *Id.* at 4.

Similarly, in *Las Vegas Sands,* the court found that Defendant Las Vegas Sands LLC properly disclosed the existence of mandatory resort fees on the website for its Palazzo hotel. *Las Vegas Sands,* 2013 WL 5291142 at *5–6. Plaintiff booked a two-night stay at the Palazzo hotel in Las Vegas using the Palazzo website. *Id.* at *2. When booking the room online, plaintiff selected his travel dates and preferred room type on the Palazzo website's "Check Rates" page. *Id.* The "Check Rates" page did not disclose any resort fees or taxes. *Id.* Next, after finalizing his selections and clicking "Reserve Now" on the Check Rates page, plaintiff was directed to the reservation page where he saw the following:

Arrival Date: 6/18/12

Number of Nights: 2

Number of Adults: 1

Number of Children: 0

Reservation Total: $386.00

Total Room Tax: $44.16

Grand Total: $412.16

*Total does not include applicable daily resort fee of $20 plus tax Suite Type: Luxury View Suite—1 bed

*Id.* at *3. "Plaintiff then checked the box to accept the Terms & Conditions and submitted his deposit payment of $412.16 as listed next to the 'Grand Total.'" *Id.* "Shortly thereafter, Plaintiff received a reservation confirmation via e-mail that reflected his payment of $412.16 and included the same fee charge language found on Palazzo's website." *Id.*

Given these facts, the court held that Palazzo's website was not misleading as matter of law because "it explicitly disclosed the existence and amount of the resort fee, as well as the fact that taxes would be charged on top of it." *Id.* at *5. Specifically, the court found that

> [t]he disclosure explicitly states that the Grand Total does not include the resort fee and taxes. This disclosure was made on a line directly beneath the Grand Total and above more information that the consumer must examine to verify the purchase. It was not tucked away inconspicuously—indeed, a reiteration of this disclosure appeared on a separately hyperlinked page of Terms and Conditions, and a third iteration appeared in Plaintiff's email ... [T]he hotel's phraseology and word placement would need to be taken completely out of context to be misunderstood or considered false ... The asterisk caveat notifies the consumer that the "Grand Total" is not entirely grand.

*Id.* As such, the court dismissed plaintiff's California consumer protection claims. *Id.* at *6.

*Ford* and *Las Vegas Sands* are factually distinguishable from this case for several reasons. First, both courts had the benefit of a complete record before it. In contrast, the parties here still dispute what information was accessible or provided to Soule when she booked her two-night stay at the Waikiki Resort. In *Ford,* the court had a complete copy of Hotwire's "Terms of Use" and reproductions of pages from Hotwire's website that reveal what a consumer sees when using Hotwire to reserve a hotel room. *Ford,* 2008 WL 5874305 at *2–3. Likewise, the *Las Vegas Sands* court had reproductions of the "Check Rates" page and reservation page. *Las Vegas Sands,* 2013 WL 5291142 at *2–3. In this case, neither party has provided the Court with reproductions from Hilton's website or booking page that reveals what Plaintiff saw during the booking process. Because this Court does not have the "context that illuminated" the *Ford* and *Las Vegas Sands* courts, determining what information was present when Soule booked her hotel room is a "factual question improper for resolution on [Hilton's] motion to dismiss." *Shahar v. Hotwire, Inc.,* No. 12–cv–06027–JSW, 2013 WL 3877785 at *5 (N.D.Cal. July 25, 2013).

Furthermore, the defendants in *Ford* and *Las Vegas Sands* clearly disclosed the existence of mandatory resort fees to hotel guests prior to booking.[10] In *Ford,* Hotwire required hotel customers to click a box agreeing to Hotwire's Term of Use Agreement before the customer submitted payment. *Ford,* 2008 WL 5874305 at *2. Hotwire's Term of Use Agreement contained an explicit disclaimer that "Hotwire rates do not include ... resort fees." *Id.* Similarly, the consumer transaction in *Las*

---

**10.** For the same reasons, the Court finds that Hilton's reliance on *Fabozzi v. StubHub,* No. C–11–4385 EMC, 2012 WL 506330 (N.D.Cal. Feb. 15, 2012), is misplaced. In *Fabozzi,* a consumer claimed that Stubhub, an online marketplace for the resale of sporting event tickets, failed to disclose the established price and "maximum premium" on Stubhub's reissued tickets. *Fabozzi,* 2012 WL 506330 at *1. As with *Hilton* and *Las Vegas Sands,* the consumer in *Fabozzi* was exposed to numerous disclosures by Defendant Stubhub, including an explicit statement at the bottom of the page disclosing that "ticket prices are set by sellers and may differ from face value." *Id.* at *6.

*Vegas Sands* involved a clear disclosure on the reservation page that the quoted total did not include a mandatory resort fee. *Las Vegas Sands*, 2013 WL 5291142 at *2–3. The consumer in that case saw the resort fee disclosure "on a line directly beneath the Grand Total and above more information that the consumer must examine to verify the purchase." *Id.* at *5. In addition, the consumer was required to check a box at the bottom of the reservation page indicating his acceptance to the "Terms & Conditions," with the phrase "Terms & Conditions" being a hyperlink connecting the consumer to a separate page. *Id.* at *2. The Terms & Conditions page clearly stated that "[r]ates do not include applicable daily Resort Fee of $20 plus tax." *Id.*

Here, accepting Plaintiff's factual allegations as true, Hilton's booking page did not include a clear statement that resort fees of $25 per night were not included in the Total for Stay. Although such a disclosure was made in the confirmation email Plaintiff received after booking the Waikiki Resort room online, it was not made prior to or at the time of booking. When Plaintiff was notified of the resort charge, Plaintiff's credit card was already charged the full amount, and Plaintiff did not have the option to cancel her reservation. FAC Ex. A at 2. There is also no showing that Soule was directed to the Any Weekend Anywhere sale rate Global Terms and Conditions, or other website that notified her that resort fees were not included in the total price. Accordingly, the facts in *Ford* and *Las Vegas Sands* are clearly distinguishable from the facts in this case.

Next, Hilton relies on the Ninth Circuit's decision in *Davis v. HSBC Bank Nevada* to argue that reasonable consumers read terms and conditions before making purchases, particularly on the Internet. *See Davis*, 691 F.3d at 1157–63. In *Davis*, a consumer alleged that HSBC Bank and

Best Buy "defrauded California consumers by offering credit cards without adequately disclosing that cardholders would be subject to an annual fee." *Davis*, 691 F.3d at 1157. The consumer alleged various causes of action under California law including false advertising, fraudulent concealment, and unlawful business practices. *Id.* at 1159. In affirming the district court's dismissal of his fraudulent concealment claim, the Ninth Circuit found that "the existence of the annual fee was within Plaintiff's observation because he concedes that he was able to discover the annual fee when he revisited Best Buy's website and scrolled through the Important Terms & Disclosure Statement." *Id.* at 1163.

Hilton construes *Davis v. HSBC Bank Nevada* as requiring that reasonable consumers read terms and conditions before making purchases, especially during online transactions. Def.'s Reply at 8–9. Hilton notes that the *Davis* court found that the advertisement for the HSBC Best Buy credit card contained a "legible disclaimer that other restrictions may apply" and, therefore, "no reasonable consumer could have believed that if an annual fee was not mentioned, it must not exist." *Davis*, 691 F.3d at 1162. The advertisement's disclaimer would thus "motivate[ ] a reasonable consumer to consult the terms and conditions." *Id.* at 1169.

In contrast to *Davis*, Soule does not concede that she was ever notified of the existence of the Any Weekend Anywhere Global Terms and Conditions or that such information was available through Hilton's website. Like the *Ford* and *Las Vegas Sands* courts, the *Davis* court "had the benefit of a complete record before it." *Shahar*, 2013 WL 3877785 at *5. Here, the parties still disagree on what information is available to consumers when they reserve a hotel through Hilton's website; furthermore, the record before the Court

does not include either Hilton's website or booking page. As such, Hilton's reliance on the Ninth Circuit's decision in *Davis v. HSBC Bank Nevada* is misplaced.

 Next, Hilton argues that Plaintiff fails to properly allege materiality, i.e., that Hilton's alleged omission "involve[d] information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Courbat*, 111 Hawai'i at 261, 141 P.3d 427. "Whether information is likely to affect a consumer's choice is an objective inquiry, turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service." *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1092 (9th Cir.2010). In this case, Hilton charged Plaintiff $25 per night for resort fees, a significant amount that could affect a hotel guest's purchasing decision. FAC Ex. B at 1. Therefore, the Court finds that Plaintiff sufficiently alleged materiality.

Finally, Hilton argues that Plaintiff relies solely on the "deceptive" prong of an unfair or deceptive practices claim. Def.'s Mot. at 8. The Court finds that Plaintiff adequately pled a violation under both prongs, including the "unfair" prong of an unfair or deceptive practices claim. Plaintiff's FAC alleges that Hilton's conduct involved "the unfair and unconscionable assessment and collection of 'resort fees.'" FAC at 2, ¶ 1. Plaintiff's FAC further alleges that Hilton's practices are substantially injurious to consumers because consumers "are deceived into choosing Hilton hotel rooms" and are required to pay more for their hotel room than they originally expected. *Id.* ¶ 3. Accordingly, the Court concludes that Plaintiff's unfair or deceptive practices claim is adequately pled under Rule 9(b).[11] Therefore, the Court DENIES Defendant's Motion to Dismiss with respect to Plaintiff's unfair or deceptive practices claim.

However, the Court, pursuant to its authority under Federal Rule of Civil Procedure 12(e), sua *sponte* orders a more definite statement as to Plaintiff's allegations in paragraph 48 and 54, and any other appropriate paragraphs, in the FAC to clarify when Plaintiff was first notified of the resort fees. *See Hall v. Tyco International Ltd.*, 223 F.R.D. 219, 257 (M.D.N.C. 2004) (holding that a district court has the power to *sua sponte* treat a motion to dismiss as a motion for a more definite statement, and order a more definite statement as to specific factual allegations in support of plaintiff's claims). Plaintiff's counsel argued at the February 18, 2014 hearing that Paragraph 40 through Paragraph 47 of the FAC refer to the booking process, while Paragraph 48 through Paragraph 54 of the FAC refer to the post-booking process, including Plaintiff's receipt of the confirmatory email. Rough Transcript of Hearing at 17–18. However, the Court notes that Paragraph 54 of the FAC[12] could be read to indicate that Plaintiff was aware of the resort fee charges at the time of booking and probably saw the language in the immediately preceding Paragraph 53 stating that a daily resort fee of $25 "will be added to the

---

11. The Court again notes that Rule 9(b)'s heightened pleading standard is not required under the unfair prong of an unfair or deceptive practices claim to the extent Plaintiff's claim is not "grounded in fraud." *See Kearns*, 567 F.3d at 1126. In any event, the Court finds that Plaintiff's allegations that Hilton violated the "unfair" prong of an unfair or deceptive practices claim meet the requirements of Rule 9(b)'s heightened pleading standard.

12. Paragraph 54 of the FAC provides: "Hilton never disclosed to consumers at the time of booking that the resort fee was mandatory or that it would be charged even if consumers never used or intended to use any of the included services." FAC at 11, ¶ 54.

room rate." FAC at 11, ¶¶ 53–54. It is thus unclear when Plaintiff in her FAC is referring to the booking process and when Plaintiff is referring to the post-booking process.

Because the Court is resolving a Rule 12(b)(6) motion, the Court construes the FAC in the light most favorable to Plaintiff and gives the non-moving party the benefit of the doubt. As such, the Court finds that the factual allegations with respect to Plaintiff's unfair or deceptive practices claim are sufficient to survive a motion to dismiss. However, the Court orders Plaintiff to provide a more definite statement as to the allegations set forth in Paragraphs 48 and 54, and any other appropriate paragraphs, for purposes of clarification as indicated above. *See Hall*, 223 F.R.D. at 257.

## C. Unjust Enrichment Claim

Plaintiff also asserts a claim under the common law doctrine of unjust enrichment. FAC at 15, ¶¶ 82–90. Specifically, Plaintiff claims that "it is inequitable for Hilton to be permitted to retain the benefits it received, without justification, from the imposition of resort fees on Plaintiff . . . in an unfair, unconscionable, and oppressive manner." *Id.* ¶ 88.

This district court has previously explained that:

> Claims for unjust enrichment and quantum meruit derive from principles of equity and quasi-contract. *See Porter v. Hu*, [116 Hawai'i 42] 16[9] P.3d 994, 1007 (Haw.2007); *Hiraga v. Baldonado*, 96 Hawai'i 365, 31 P.3d 222, 229 (Haw. [Ct.App.] 2001). Hawai'i law has approved "the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'" *Porter*, 169 P.3d at 1007 (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). The absence

of an adequate remedy at law, therefore, is the "necessary prerequisite" to maintaining equitable claims. *Id.* (quoting *Bd. of Dirs. of the Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency Tower Venture*, 2 Haw.App. 506, 635 P.2d 244, 249 (Haw.Ct.App.1981)).

> It is also well settled in federal courts that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter. *See Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir.1996); *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir.1996); *Gibbs–Brower Int'l v. Kirchheimer Bros. Co.*, 611 F.Supp. 122, 127 (N.D.Ill.1985); *Gerlinger v. Amazon.com, Inc.*, 311 F.Supp.2d 838, 856 (N.D.Cal.2004). Hawai'i law has recently endorsed application of this principle as well. *See Porter*, 169 P.3d at 1007. The purpose of the rule is to guard against the use of equitable remedies to "distort a negotiated arrangement by broadening the scope of the contract." *Gibbs–Brower Int'l*, 611 F.Supp. at 127. Where the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity.

*Swartz v. City Mortg., Inc.*, 911 F.Supp.2d 916, 938 (D.Haw.2012) (citing *AAA Hawaii, LLC v. Hawaii Insurance Consultants, Ltd.*, CV. No. 08–00299 DAE–BMK, 2008 WL 4907976 at *3 (D.Haw. Nov. 12, 2008)).

█ Here, the Court finds that Plaintiff has an adequate remedy at law in the form of a claim under Hawaii's Unfair and Deceptive Trade Practices Act, H.R.S. § 480–2(a). *Porter*, 169 P.3d at 1007 (holding that the absence of an adequate remedy at law is the "necessary prerequisite" to maintaining equitable claims). Plaintiff's unjust enrichment claim merely

incorporates the other facts of the FAC by reference and makes a conclusory allegation that the resort "charges were unjust and were 'received at the expense of' Plaintiff." Def.'s Opp. at 34. Plaintiff also fails to indicate how the damages she would receive under H.R.S. § 480–2(a) are inadequate. Cf. *Davis v. Four Seasons Hotel Ltd.*, CV No. 08–00525 HG–BMK, 2011 WL 5025521 at *6 (D.Haw. Oct. 20, 2011) (finding that plaintiffs had an adequate remedy at law under H.R.S. § 388–6 and were thus precluded from asserting an "unjust enrichment claim seeking the same damages"). In short, Plaintiff does not explain how its H.R.S. § 480–2(a) claim does not "fully address [the] injustice" it allegedly suffered at the hands of Hilton. *See Porter*, 169 P.3d at 1007.

Hilton also notes that Plaintiff claims "Hilton breached the express promise made in the booking confirmation that the Total for Stay" did not include additional service charges such as resort fees. FAC at 10, ¶ 46. To the extent Plaintiff's theory of liability is premised on an express contract or agreement between Hilton and Plaintiff, "equitable remedies are not available" to Plaintiff. *Swartz*, 911 F.Supp.2d at 938.[13]

Finally, Plaintiff argues that even if her unjust enrichment claim is "somehow in conflict with her H.R.S. § 480–2 claim," the Federal Rules of Civil Procedure "allow pleading in the alternative, even if the theories are inconsistent." Pl.'s Opp. at 34. Federal Rule of Civil Procedure 8(a)(3) provides that a "pleading that states a claim for relief must contain a demand for the relief sought, which may include relief in the alternative or different types of relief." Rule 8(d) further provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones ... A party may [also] state as many separate claims or defenses as it has, regardless of consistency."

Indeed, Rule 8(d) allows a plaintiff to pled in the alternative and, contrary to Hilton's assertions, there is no requirement that Plaintiff include the magic words "in the alternative" in making alternative claims. However, the Court finds that Plaintiff cannot assert an unjust enrichment claim, even in the alternative, because Hawaii law makes clear that the absence of an adequate remedy at law is a necessary prerequisite to maintaining an unjust enrichment claim. *Porter*, 169 P.3d at 1007. Furthermore, this district court on multiple occasions has granted a defendant's motion to dismiss with respect to plaintiff's unjust enrichment claim when an express contract or agreement concerning the same subject matter existed between the parties. *Franco v. Federal Nat. Mortg. Ass'n*, CV No. 10–00735 DAE–KSC, 2011 WL 1842970 at *7 (D.Haw. May 13, 2011); *Newcomb v. Cambridge Loans, Inc.*, 861 F.Supp.2d 1153, 1164–65 (D.Haw. 2012); *see also O'Gea v. Home Depot USA, Inc.*, CV No. 08–4744, 2009 WL 799757 at *2 (E.D.La. Mar. 20, 2009) ("It is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied. Unjust enrichment principles are only applicable

---

**13.** The Court notes that notwithstanding Hilton's assertion that it "move[s] to dismiss all claims" in Plaintiff's FAC, Hilton in its discussion of Plaintiff's unjust enrichment claim states that Plaintiff has alleged a breach of an express promise claim and, accordingly, Hilton is "limited to contractual remedies instead of equitable remedies." Def.'s Mot. at

19. As such, the Court concludes that Plaintiff's express contract or agreement claim survives Defendant's Motion to Dismiss. However, the Court, pursuant to its authority under Federal Rule of Civil Procedure 12(e), *sua sponte* orders a more definite statement as to Plaintiff's allegations in Paragraph 46 of the FAC. *See Hall*, 223 F.R.D. at 257.

to fill a gap in the law where no express remedy is provided.") (emphasis in original).

Since Plaintiff has an adequate remedy at law in the form of a claim under Hawaii's Unfair and Deceptive Trade Practices Act and an express contract or agreement exists between the parties, she is precluded from asserting an unjust enrichment claim. Accordingly, the Court DISMISSES Plaintiff's unjust enrichment claim without prejudice.

## D. Voluntary Payment Rule

■ Hilton argues that Plaintiff's claims are barred by the "Voluntary Payment Rule." Pl.'s Mot. at 17–18. Citing *Godoy v. Hawaii County*, Hilton contends that "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance." 44 Haw. 312, 325, 354 P.2d 78, 85 (1960). As such, Hilton argues that Plaintiff "had multiple opportunities to reject the resort fees" and should have "raised her supposed concerns about Hilton's resort fees when she checked out of the [Waikiki Resort] or before her stay." Def.'s Mot. at 17–18 (parentheses omitted).

Hawaii case law on the Voluntary Payment Rule is sparse. Hilton cites *Godoy* in support of its contention that the rule bars Plaintiff's claims. Def.'s Mot. at 17–18. In *Godoy*, a bus owner, Godoy, filed suit against the County of Hawaii to recover a portion of the amount he paid to the county for using its bus terminal facilities. *Godoy*, 44 Haw. at 313–15, 354 P.2d 78. The Hawaii Supreme Court found that Godoy had agreed to the adoption of an arrangement passed by the county's bus control committee called the Mabuni Plan and, therefore, was estopped "from maintaining

that he was overcharged [under the plan] by the committee." *Id.* at 318, 354 P.2d 78.

The Hawaii Supreme Court based its decision on the common law doctrine of "quasi-estoppel." *Id.* at 320, 354 P.2d 78. The Court referred to quasi-estoppel as a "species of equitable estoppel ... which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by him." *Id.* The *Godoy* Court further explained that quasi-estoppel "is based upon the broad equitable principle which courts recognize, that a person, with *full knowledge of the facts*, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another." *Id.* (emphasis added).

The Court concludes that *Godoy* is distinguishable from the instant matter. In *Godoy*, the bus owner was specifically "in favor of and urged the adoption of the Mabuni Plan" and then later claimed the same plan charged him excessive fees. *Id.* at 318, 354 P.2d 78. Here, Plaintiff allegedly did not support or endorse Hilton's practice of charging resort fees at its Hawaiian properties. Moreover, and importantly, the *Godoy* Court stressed that application of the equitable theory of quasi-estoppel requires a showing that a plaintiff has "full knowledge of the facts." *Id.* In this case, however, Plaintiff alleges that she had no knowledge of the resort fees until after she had already booked her reservation and after her credit card was charged for the amount shown in the Total for Stay. Once Plaintiff learned of the existence of the mandatory resort fee, she could not cancel her reservation per the Any Weekend Anywhere "Rate Rules and Cancellation Policy." *See* FAC Ex. A at 2.[14]

14. The Court also expresses some doubt about the applicability of the Voluntary Payment

In addition, the Court concludes that Hilton's assertion of the Voluntary Payment Rule is an affirmative defense to Plaintiff's claims because it raises matters "extraneous to the plaintiff's prima facie case." *In re Rawson Food Serv.*, 846 F.2d 1343, 1349 (11th Cir.1988).[15] A court may not grant a Rule 12(b)(6) motion to dismiss based upon an affirmative defense unless that defense raises no disputed issues of fact. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984). In this case, Hilton's argument that Plaintiff could have rejected the resort fees or raised her concern over the resort fees at the time of checkout, as well as before filing suit, is extraneous to whether Plaintiff sufficiently alleged that Hilton adequately disclosed the existence of mandatory resort fees prior to Plaintiff's booking of the Waikiki Resort. Accordingly, the Court declines to dismiss Plaintiff's claims on the basis of the Voluntary Payment Rule.

## CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES Plaintiff's Motion to Strike Declaration of Nancy Deck and Exhibit A attached thereto;

(2) GRANTS Defendant's Motion to Dismiss with respect to Plaintiff's unfair methods of competition claim;

(3) DENIES Defendant's Motion to Dismiss with respect to Plaintiff's unfair or deceptive practices claim, but requires a more definite statement as to Paragraphs 48 and 54 of the FAC;

(4) DENIES Defendant's Motion to Dismiss with respect to Plaintiff's express contract or agreement claim, but requires a more definite statement as to this claim; and

(5) GRANTS Defendant's Motion to Dismiss with respect to Plaintiff's claim for unjust enrichment.

IT IS SO ORDERED.

Rule to Plaintiff's claim under Hawaii's Unfair and Deceptive Trade Practices Act. The consumer protection statute is remedial in nature and "was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest business persons." *Keka*, 94 Hawai'i at 228, 11 P.3d 1. Although the Court need not decide whether the Voluntary Payment Rule is inapplicable against consumer protection statutes, the Court notes that several jurisdictions find that the Voluntary Payment Rule does not apply to statutes like H.R.S § 480–2. *See, e.g., Brown v. SBC Communications, Inc.*, No. 05–CV–777–JPG, 2007 WL 684133 at *9 n. 3 (S.D.Ill. Mar. 1, 2007); *Indoor Billboard/Washington,*

*Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash.2d 59, 170 P.3d 10 (2007) (finding that the "voluntary payment doctrine is inappropriate as an affirmative defense under Washington's Consumer Protection Act context, as a matter of law, because" the statute is "construe[d] liberally in favor of plaintiffs"); *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 727 (2009) ("In light of the legislative purposes of the merchandising practices act, the voluntary payment doctrine is not available as a defense to a violation of the act.").

15. The Ninth Circuit cited *Rawson* when discussing the nature of an affirmative defense. *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002).